JOSEPH GRIGERIK *v.* GARY SHARPE
(SC 15779)

Callahan, C. J., and Borden, Berdon, Norcott and Katz, Js.

Argued September 22—officially released December 22, 1998

*Timothy Brignole,* for the appellant-appellee (plaintiff).

*Lorinda S. Coon,* with whom was *Elizabeth Fairbanks Flynn,* for the appellants-appellees (defendants).

*Opinion*

BORDEN, J. The dispositive issues in this certified appeal are: (1) whether the seven year limitation period of General Statutes § 52-584a,[1] or the two year limitation

---

[1] General Statutes § 52-584a provides: "Actions against architect or professional engineer. (a) No action or arbitration, whether in contract, in tort, or otherwise, (1) to recover damages (A) for any deficiency in the design, planning, contract administration, supervision, observation of construction or construction of an improvement to real property; (B) for injury to property, real or personal, arising out of any such deficiency; (C) for injury to

period of General Statutes § 52-584,[2] applies to this action; and (2) whether it is the intent of the promisee of a contractual obligation, rather than the intent of both of the parties to the contract, which determines whether a third party is a beneficiary of the contract in question. The plaintiff, Joseph Grigerik, appeals, and the defendants,[3] Gary Sharpe and Angus McDonald-

the person or for wrongful death arising out of any such deficiency, or (2) for contribution or indemnity which is brought as a result of any such claim for damages shall be brought against any architect or professional engineer performing or furnishing the design, planning, supervision or observation of construction or construction of such improvement more than seven years after substantial completion of such improvement.

"(b) Notwithstanding the provisions of subsection (a) of this section, in the case of such an injury to property or the person or such an injury causing wrongful death, which injury occurred during the seventh year after such substantial completion, an action in tort to recover damages for such an injury or wrongful death may be brought within one year after the date on which such injury occurred, irrespective of the date of death, but in no event may such an action be brought more than eight years after the substantial completion of construction of such an improvement.

"(c) For purposes of subsections (a) and (b) of this section, an improvement to real property shall be considered substantially complete when (1) it is first used by the owner or tenant thereof or (2) it is first available for use after having been completed in accordance with the contract or agreement covering the improvement, including any agreed changes to the contract or agreement, whichever occurs first.

"(d) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring action."

[2] General Statutes § 52-584 provides: "Limitation of action for injury to person or property. No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

[3] The original complaint named Gary Sharpe as the only defendant. Thereafter, the trial court granted the plaintiff's motion to add Angus McDonald-

Gary Sharpe and Associates, Inc., cross appeal from the judgment of the Appellate Court. The Appellate Court concluded that: (1) as to the plaintiff's negligence count against the defendants, the two year statute of limitations of § 52-584 applied; and (2) as to the breach of contract count against the defendants by the plaintiff, as a third party beneficiary of the contract, the trial court improperly instructed the jury that it must find that both the contracting parties intended the plaintiff to be a third party beneficiary of the contract. We conclude that: (1) the seven year limitations period of § 52-584a applies to this action; and (2) it is the intent of both parties to a contract that determines whether a third party is a beneficiary of a contract. Accordingly, we reverse the judgment of the Appellate Court.

The plaintiff brought this action against the defendants in two counts.[4] The first count alleged a breach of the contract between the defendants and Edward Lang, the plaintiff's predecessor in title to an unimproved plot of land in Killingworth. Pursuant to the contract, the defendants had agreed to perform professional engineering services, namely, certain soil testing and site planning necessary to the construction of a septic system that would comply with state and local regulations. The plaintiff claimed to be a third party beneficiary of that contract. The second count was based on the negligence of the defendants in performing these professional services.

With respect to the negligence count, the defendants pleaded, as a special defense, the two year limitations

Gary Sharpe and Associates, Inc., as a party defendant. Hereafter, we refer to both the individual defendant and the corporate defendant collectively as the defendants.

[4] The amended complaint contained four counts at the commencement of the trial. The first two counts, which named only Sharpe as the defendant, were withdrawn before the case was submitted to the jury, leaving two counts, each of which was directed against both defendants. All references to the first and second counts, therefore, refer to the third and fourth counts, respectively, of the amended complaint.

period of § 52-584. The trial court ruled, however, that the negligence action was not barred by that provision. With respect to the breach of contract count, the trial court instructed the jury that, in order for the plaintiff to recover as a third party beneficiary to the contract, he was required to establish that he was either an intended, a contemplated, or a foreseeable beneficiary of the contract between Lang and the defendants.[5] In response to specific interrogatories, the jury found that, although the plaintiff was neither an intended nor a contemplated beneficiary, he was a foreseeable beneficiary of the contract. The jury found for the plaintiff on both counts, and the trial court rendered judgment for the plaintiff on the verdict.

On the defendants' appeal to the Appellate Court, the court concluded that the two year statute of limitations provided by § 52-584 applied so as to bar the plaintiff's negligence count. With respect to the breach of contract count, the Appellate Court concluded that the trial court's instructions were flawed in two respects: first, in favor of the plaintiff, by permitting him to recover as a foreseeable, rather than an intended beneficiary

---

[5] The trial court instructed the jury as follows: "In light of all the evidence, you must determine whether [the plaintiff] was an intended, contemplated or foreseeable third party which was to derive a benefit from the contract for professional services entered into between the defendants and [Lang]. You must determine that it was intended, contemplated and foreseeable that any buyer of the property would derive a benefit from the contract or you may determine that it was intended, contemplated or foreseeable that [the plaintiff] specifically would derive a benefit from the contract. If you find that it was intended that [the plaintiff] was an intended, contemplated or foreseeable beneficiary to the contract, then you must find that [the plaintiff] was a third party beneficiary to the contract. In summary, if you determine that [the plaintiff] was a third party beneficiary to the contract and that the defendants breached the contract, then [the plaintiff] is entitled to the damages caused him as a result of the breach."

The defendants took exception to the charge, and requested a charge to the effect that a determination that both contracting parties intended Lang to have a direct obligation to the plaintiff was requisite to a finding for the plaintiff on the breach of contract count.

of the contract; second, in favor of the defendants, by requiring that both parties, rather than just the promisee of the contractual obligation in question, intended to benefit the plaintiff. Accordingly, the Appellate Court reversed the judgment of the trial court, ordered that judgment be rendered for the defendants on the negligence count, and ordered a new trial on the breach of contract count.[6] *Grigerik* v. *Sharpe*, 45 Conn. App. 775, 798, 699 A.2d 189 (1997). Both the plaintiff and the defendants sought certification to appeal, and this appeal followed.[7]

On his appeal regarding the negligence count, the plaintiff claims that the Appellate Court improperly concluded that the two year limitation period of § 52-584 applied so as to bar the action. On their cross appeal regarding the breach of contract count, the defendants

---

[6] The Appellate Court, therefore, declined to address an additional claim of the defendants, namely, that the trial court improperly had permitted the plaintiff to amend his negligence count at the beginning of the trial. As a result of our disposition of this appeal, it will be necessary for the Appellate Court to consider this claim upon the remand. In addition, the Appellate Court rejected two evidentiary claims by the defendants, which are not involved in this appeal.

[7] We granted the plaintiff's petition for certification to appeal from the Appellate Court, limited to the following issue: "Did the Appellate Court correctly conclude that the two year statute of limitations (General Statutes § 52-584) applied to a civil action against a professional engineer for negligent soil testing and negligent design of a site plan rather than the seven year statute of limitations specifically applying to architects and professional engineers (General Statutes § 52-584a)?" *Grigerik* v. *Sharpe*, 243 Conn. 918, 701 A.2d 342 (1997).

We granted the defendants' cross petition for certification to appeal from the Appellate Court, limited to the following issues: "1. Did the Appellate Court properly hold that only the intent of the promisee, and not the intent of both contracting parties, is dispositive of the rights of an alleged third-party beneficiary of a contract?

"2. Where the jury had specifically found that the plaintiff was neither an 'intended' nor 'contemplated' beneficiary of a contract between the defendant and another, but only a 'foreseeable' beneficiary of that contract, did the Appellate Court properly remand the case for retrial on the third-party beneficiary claim rather than entering judgment for the defendants?" *Grigerik* v. *Sharpe*, 243 Conn. 918, 918–19, 701 A.2d 342 (1997).

claim that the Appellate Court improperly concluded that the intent of the promisee only, rather than the intent of both contracting parties, determines whether there is a third party beneficiary to a contract. We agree with the contentions of both the plaintiff and the defendants.

The Appellate Court opinion sets forth the following facts that the jury reasonably could have found. "In 1983, Edward Lang purchased a tract of undeveloped land on Reservoir Road in the town of Killingworth. The property contained a hill, a marshy area, trees and many vines and bushes. Lang removed some of the trees and bushes and also obtained the release of a power line easement that the utility company no longer needed. Because the land was adjacent to a reservoir, it was within a designated watershed area.

"In 1985, Lang negotiated with the plaintiff for the sale of the land. The plaintiff offered $9000 for the property 'as is.' He told Lang, however, that he would pay $16,000 if Lang would do the work necessary to obtain the town's approval of the land as a building lot. Lang agreed to do so. Both of them accompanied the sanitarian for Killingworth when he examined the property. He told them that, because the land was within a watershed district, they needed an engineer to prepare a site plan for drainage.

"Lang hired the defendant Gary Sharpe, a professional engineer, and the corporate defendant [Angus McDonald-Gary Sharpe and Associates, Inc.] to prepare a site plan, to design a subsurface sanitary sewage disposal system and to perform the necessary soil testing. Lang told Sharpe that he needed the site plan in order to obtain approval of the land as a building lot and that he had a buyer for the land if the town granted approval.[8]

---

[8] The Appellate Court also noted that "Sharpe testified at trial that Lang had not informed him of his intention to sell the property." *Grigerik* v. *Sharpe*, supra, 45 Conn. App. 778 n.2.

Sharpe did some of the work necessary for the application and various employees of his firm performed the remainder. They completed their work on the site plan on October 16, 1985. After receiving the site plan from Sharpe, Lang presented it to the Killingworth inland wetlands commission, which granted its approval. On November 19, 1985, Lang sold the property to the plaintiff for $16,000, as they had agreed.

"In the spring of 1986, the plaintiff cleared the land and applied to the town sanitarian for the permits necessary to begin construction of a house in August. The new town sanitarian for Killingworth denied the plaintiff's application for a building permit even though his predecessor had told the plaintiff that the septic system would be approved. The new sanitarian said he was concerned about the suitability of the soil conditions and whether the percolation tests had been performed in the presence of the previous sanitarian. He told the plaintiff that additional percolation tests would have to be performed by an engineer in the presence of a representative of the state department of health (department) during the following spring when the soil would be saturated.

"When the percolation tests were performed on March 5, 1987, it was concluded that a curtain drain would have to be installed on the land in order to control the seasonally high groundwater. After the plaintiff had constructed the curtain drain, more percolation tests were completed and submitted to the department. On May 20, 1987, that department informed the plaintiff that the tests indicated that the land was unsuitable for a septic sewage disposal system. Additional percolation testing was done in the spring of 1989 in the presence of a department representative, who determined that the tests indicated that minimum public health standards for a septic system could not be met and that the building permits could not be issued.

"The plaintiff commenced this action by service on Sharpe on September 20, 1989, and, pursuant to a motion to cite in an additional defendant, his corporation was served on June 5, 1991. After a trial, the jury found the issues for the plaintiff and rendered a verdict for damages of $44,024, including interest, on both the negligence and breach of contract counts of the complaint." *Grigerik* v. *Sharpe*, supra, 45 Conn. App. 777–79.

I

We first consider the plaintiff's claim, asserted in his appeal; see footnote 7 of this opinion; that the Appellate Court improperly concluded that § 52-584 applied to this action against a professional engineer for negligent soil testing and the negligent design of a site plan. The plaintiff claims that the seven year statute of limitations of § 52-584a; see footnote 1 of this opinion; rather than the two year statute of limitations of § 52-584; see footnote 2 of this opinion; governs the negligence portion of this action. The defendants contend that the Appellate Court properly determined that § 52-584 applies and that the negligence count was therefore barred by the statute of limitations. We conclude that § 52-584a provides the statute of limitations applicable to the plaintiff's negligence claim and that, therefore, the claim was timely brought.

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to

its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997).

In 1986, the Appellate Court was presented with the issue of whether § 52-584 or General Statutes (Rev. to 1985) § 52-584a applied to a negligence action against an architect and a professional engineer. *R.A. Civitello Co.* v. *New Haven*, 6 Conn. App. 212, 504 A.2d 542 (1986). Focusing on the language of the statute as it existed in 1986, prior to being amended later that same year,[9] particularly on the language found in subsection

[9] Prior to the amendments of Public Acts 1986, No. 86-266, § 2, General Statutes (Rev. to 1985) § 52-584a provided: "(a) *Notwithstanding any provision of the general statutes*, no action or arbitration, whether in contract, in tort, or otherwise, (1) to recover damages (A) for any deficiency in the design, planning, contract administration, supervision, observation of construction or construction of an improvement to real property; (B) for injury to property, real or personal, arising out of any such deficiency; (C) for injury to the person or for wrongful death arising out of any such deficiency, or (2) for contribution or indemnity which is brought as a result of any such claim for damages shall be brought against any architect or professional engineer performing or furnishing the design, planning, supervision or observation of construction or construction of such improvement more than seven years after substantial completion of such improvement.

"(b) Notwithstanding the provisions of subsection (a) of this section, in the case of such an injury to property or the person or such an injury causing wrongful death, which injury occurred during the seventh year after such substantial completion, an action in tort to recover damages for such an injury or wrongful death may be brought within one year after the date on which such injury occurred, irrespective of the date of death, but in no event may such an action be brought more than eight years after the substantial completion of construction of such an improvement.

"(c) For purposes of subsections (a) and (b) of this section, an improvement to real property shall be considered substantially complete when (1) it is first used by the owner or tenant thereof or (2) it is first available for use after having been completed in accordance with the contract or agreement covering the improvement, including any agreed changes to the contract or agreement, whichever occurs first.

"(d) *Nothing in this section shall be construed to extend the period prescribed by the laws of this state for the bringing of any action.*

(a) of § 52-584a—"[n]otwithstanding any provision of the general statutes," and in subsection (d) of § 52-584a—"[n]othing in this section shall be construed to extend the period prescribed by the laws of this state for the bringing of any action," the Appellate Court held that "[t]he intent of the seven year statute, as its clear mandate, was to create a seven year absolute maximum on actions against architects and engineers, based upon the finite barrier of substantial completion . . . *while leaving any other lesser limitations in effect.*" (Emphasis added.) Id., 229.[10] Specifically, although the Appellate Court recognized that it could "be argued that the fact that contract and tort actions are specifically mentioned in General Statutes [Rev. to 1985] § 52-584a evidences an intent that the new seven year statute be the statute of limitations for actions involving architects and engineers"; id., 224; the court determined that this inference was rebutted "by the opening phrase of General Statutes [Rev. to 1985] § 52-584a which states notwithstanding any provision of the General Statutes, by the language of [General Statutes (Rev. to 1985)] § 52-584a (d), and by the entire background of [General Statutes (Rev. to 1985)] § 52-584a." (Internal quotation marks omitted.) Id. The Appellate Court held, therefore, that § 52-584, rather than General Statutes (Rev. to 1985) § 52-584a, applied to the city of New Haven's

"(c) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring action." (Emphasis added.)

[10] The Appellate Court also noted that at the time the original version of § 52-584a was enacted, two changes recently had altered modern tort law: the fall of the privity requirement; and the death of the " 'completed and accepted' rule, [under which] the liability of a design professional or builder terminated when the improvement was finished and accepted by the owner." *R.A. Civitello Co.* v. *New Haven,* supra, 6 Conn. App. 224. The court referred to certain legislative history indicating that it was the legislature's concern over this increasing liability facing architects and professional engineers that had prompted the legislature to enact § 52-584a.

third party action against an architect and a structural engineering company.

*R.A. Civitello Co.* was decided in February, 1986. By April, 1986, however, the legislature already had considered and passed *Public Acts 1986, No. 86-266, § 2 (P.A. 86-266).*[11] Both the language and the legislative history of that enactment indicate the legislature's intent to overturn *R.A. Civitello Co.* and to provide a seven year statute of limitations for certain actions against architects and engineers, rather than a two year statute of limitations coupled with a seven year statute of repose. Public Act 86-266 amended General Statutes (Rev. to 1985) § 52-584a by deleting the introductory phrase, "[n]otwithstanding any provision of the general statutes," from subsection (a), and the language of subsection (d), "[n]othing in this section shall be construed to extend the period prescribed by the laws of this state for the bringing of any action." The legislature, therefore, amended General Statutes (Rev. to 1985) § 52-584a so as to remove the precise language relied upon by the Appellate Court in *R.A. Civitello Co.* to conclude that that statute was solely a statute of repose. As a result, the language of § 52-584a; see footnote 1 of this opinion; now contains no reference to any other statute, and commences with language that is similar to the language that begins other statutes that we previously have construed as operating, at least in part, as statutes of limitations. See, e.g., General Statutes § 52-577, governing actions based in tort ("[n]o action founded upon a tort shall be brought"); General Statutes § 52-577a, governing actions based on product liability ("[n]o product liability claim . . . shall be brought"); General Statutes § 52-576, governing actions based in contract ("[n]o action for an account . . . shall be brought"). Moreover, in discussing the proposed

---

[11] Section 1 of P.A. 86-266 pertained to certain workers' compensation claims against architects and engineers. It is not involved in this appeal.

amendments to General Statutes (Rev. to 1985) § 52-584a, Representative Martin M. Looney stated: "We currently have in our statutes, Mr. Speaker, a seven year statute of limitations for actions against architects and engineers involving deficiencies in design and planning contract administration and so on. *What this amendment would do is ensure that seven year statute would apply and that a shorter statute such as the three year general negligence standard or the six year statute on contract matters would not be superimposed on the statute regarding architects. This is to correct a problem that was highlighted, Mr. Speaker, in the case of* [*R.A. Civitello Co.* v. *New Haven,* supra, 6 Conn. App. 212] *decided by the Appellate Court earlier this year* . . . ." (Emphasis added.) 29 H.R. Proc., Pt. 11, 1986 Sess., pp. 4127–28. Finally, commenting on the changes to General Statutes (Rev. to 1985) § 52-584a resulting from P.A. 86-266, Senator Kenneth T. Hampton stated: "House Amendment 'A' adds the provision changing the statute of limitations to seven years in cases where the statute of limitations were fewer than seven years to apply for civil actions against architects and engineers." 29 S. Proc., Pt. 9, 1986 Sess., p. 3072.

Our conclusion that § 52-584a constitutes a seven year statute of limitations for certain actions against architects and engineers, however, does not end our inquiry. The defendants argue that, as the Appellate Court concluded, § 52-584a does not apply to this action because there was no "improvement" to real property, as that phrase is used in the statute, from which the seven year period could begin to run. In the defendants' view, in order for there to have been an "improvement" so as to trigger the applicability of the statute, there must have been a building erected as a result of the architect's or engineer's services. The plaintiff responds that § 52-584a applies to *all* civil actions against architects and engineers within the scope of their professional services, irrespective of whether they resulted

or were intended to result in a building or structure, and, in the alternative, that the soil testing and design of the septic system in this case constituted an improvement as contemplated by the statute. Although we disagree with the breadth of the plaintiff's arguments, we also disagree with the narrowness of the defendants' arguments. We conclude that the negligence at issue in this case related to an improvement as contemplated by the statute and that, under the circumstances of this case, § 52-584a applies.

Section 52-584a (a) provides in relevant part: "No action or arbitration, whether in contract, in tort, or otherwise, (1) to recover damages (A) for any deficiency in the design, planning, contract administration, supervision, observation of construction or construction of an *improvement to real property* . . . shall be brought . . . more than seven years after substantial completion of such *improvement*." (Emphasis added.) Moreover, the statute contemplates a completed "improvement" to real property in its principal application. Section 52-584a (c) provides in relevant part that "an improvement to real property shall be considered substantially complete when (1) it is first used by the owner or tenant thereof or (2) it is first available for use after having been completed in accordance with the contract or agreement covering the improvement . . . ."

"In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." General Statutes § 1-1 (a). The phrase "improvement to real property" is a phrase that has acquired a particular meaning in the law. Without attempting to define the phrase in all its possible nuances and applications, we have little difficulty in

concluding that an "improvement to real property," as commonly understood in the law, "[g]enerally has reference to buildings, but may also include any permanent structure or other development [of the real property in question]." Black's Law Dictionary (6th Ed. 1990). Consistent with that understanding, we have defined an improvement to real property as an alteration or development of the property in order to enhance or promote its use for a particular purpose. *Metropolitan District* v. *Barkhamsted*, 199 Conn. 294, 302, 507 A.2d 92 (1986). Thus, an "improvement to real property" as used in § 52-584a ordinarily requires some physical addition to or alteration of the property in question in order to enhance or promote its use for a particular purpose.[12]

In the ordinary case, therefore, the seven year statute of limitations begins to run from the date of the substantial completion of the improvement for which the architect or engineer performed the services. In this case, therefore, had the proposed septic system that was the subject of the defendants' services been installed, the seven years would have begun to run from the date when the system was first used or available for use. The case before us, however, presents the question of whether § 52-584a applies to a situation in which the defect in the professional services rendered was discovered before the intended improvement was begun, and the reason that the improvement was not and could not be effectuated was precisely because of that defect.

"When two constructions are possible, courts will adopt the one which makes the [statute] effective and

---

[12] Legislative history supports this interpretation of the meaning of improvement under § 52-584a. In referring to § 52-584a (c), Representative William C. Leary assumed that an improvement was a building: "The first definition is a building used by an owner or a tenant thereof or secondly a building that is available for use after having been completed in accordance with the contract." 13 H.R. Proc., Pt. 8, 1969 Sess., p. 3917.

workable, and not one which leads to difficult and possibly bizarre results. . . . We consider the statute as a whole with a view toward reconciling its parts in order to obtain a sensible and rational overall interpretation." (Internal quotation marks omitted.) *Butler* v. *Hartford Technical Institute, Inc.*, 243 Conn. 454, 462, 704 A.2d 222 (1997); see *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 26–27, 717 A.2d 77 (1998) ("[i]n order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation"). It would be irrational to conclude that, in a case such as this, the two year period of § 52-584 applied so that the injured party would have less time to bring his cause of action than if the improvement had been effectuated and the defect discovered after the substantial completion of the intended improvement. Thus, we conclude that, where the improvement to real property contemplated by the architect's or engineer's services is not completed because of the defect complained of, § 52-584a, and not § 52-584, applies to the plaintiff's cause of action.[13]

We recognize that our conclusion that § 52-584a applies where an improvement is planned but never effectuated could result in a situation in which the limitations period might not begin to run until well beyond seven years after the alleged negligence.[14] Because that

[13] Moreover, adoption of the defendants' suggested interpretation could provide incentives for wasteful behavior. For example, customers who discover a defective plan or design more than three years after a design is initiated would have no incentive to stop or delay the development of a structure in accordance with the defective plan. Stopping the construction would leave the consumer barred from bringing any action because the limitations period of § 52-584 would have lapsed, and § 52-584a would not apply because no structure had been effectuated.

[14] It is conceivable that, *because* of a defective design, the planned improvement is not effectuated and the property owner waits more than seven years to bring an action. That would be the situation, for example, if the plaintiff

is not the situation before us, however, we leave the determination of precisely when the seven year limitations period would begin to run to a case that presents that question. In the present action, the negligence occurred during October, 1985, and the plaintiff commenced this action in September, 1989, less than seven years after final completion of the allegedly defective design. Thus, under any reading of the statute, the action was timely. We conclude, therefore, that the negligence count was not barred by any applicable statute of limitations.

## II

We next consider the claim raised in the defendants' cross appeal; see footnote 7 of this opinion; that, regarding the plaintiff's breach of contract count, the Appellate Court improperly concluded that it is the intent of the promisee only, rather than the intent of both contracting parties, that determines whether a third party has enforceable rights under a contract. As noted earlier, the jury found that the plaintiff was a foreseeable third party beneficiary of the contract between the defendants and Lang, and returned a verdict in favor of the plaintiff on the plaintiff's breach of contract count.

The plaintiff argues that the Appellate Court properly concluded that, in *Stowe* v. *Smith*, 184 Conn. 194, 441 A.2d 81 (1981), we had "changed the law" regarding the rights of third parties to enforce rights under a contract, and that "a mutual intent of the promisor and promisee is no longer necessary for a beneficiary to have a right to enforce the contract." *Grigerik* v. *Sharpe*, supra, 45 Conn. App. 787. Concluding that the trial court improperly had instructed the jury on the breach of contract issue, the Appellate Court reversed

in this case had first commenced this action in September, 1995. In such a case, however, the doctrine of laches might apply to bar the action, even if § 52-584a did not apply.

the judgment and remanded the case to the trial court for a new trial on the breach of contract count. Id., 789. We disagree with the plaintiff and the Appellate Court that the law governing the contract rights of third party beneficiaries has been changed, by *Stowe* or any other decision of this court, and we conclude that the intent of both parties to a contract determines whether a third party has contract rights as a third party beneficiary. We also conclude, based on the jury's responses to certain interrogatories, that the jury conclusively found that the plaintiff was not a third party beneficiary of the contract in question. Accordingly, we reverse the judgment of the Appellate Court and direct that judgment be rendered for the defendants on the breach of contract count.

This claim originated with the defendants' challenge in the Appellate Court to: (1) the trial court's instructions to the jury regarding the determination of whether a third party beneficiary relationship existed between the plaintiff and the defendants; see footnote 5 of this opinion; and (2) the trial court's subsequent failure to grant the defendants' motion to set aside the verdict, following the jury's express determination as evidenced by its responses to certain interrogatories,[15] that the contracting parties had not intended to benefit the plaintiff. The Appellate Court agreed with the defendants

[15] Three of the interrogatories posed to the jury related to the third party beneficiary issue. Those interrogatories and responses were as follows:

"1. Did the plaintiff prove, by a fair preponderance of the evidence, that Joseph Grigerik was an intended third-party beneficiary to the contract between Edward Lang and Gary Sharpe in 1985?

"No.

"2. Did the plaintiff prove, by a fair preponderance of the evidence, that Joseph Grigerik was a contemplated third-party beneficiary to the contract between Edward Lang and Gary Sharpe in 1985?

"No.

"3. Did the plaintiff prove, by a fair preponderance of the evidence, that Joseph Grigerik was a foreseeable third-party beneficiary to the contract between Edward Lang and Gary Sharpe in 1985?

"Yes."

that the jury instructions were flawed and prejudiced the defendants because they permitted the plaintiff to recover as merely a foreseeable beneficiary of the contract. The court also concluded, however, contrary to the defendants' position, that the trial court's flawed instructions prejudiced the plaintiff because they failed to instruct the jury "that it was the intent of Lang, the promisee, that should determine whether the plaintiff was a third party beneficiary." On appeal to this court, the defendants maintain that the Appellate Court's judgment ordering a new trial on the breach of contract count was based on an incorrect assessment of the law. We agree.

The traditional rule requiring that courts consider the intentions of both parties in construing a contract is well settled. *Lar-Rob Bus Corp.* v. *Fairfield,* 170 Conn. 397, 406–407, 365 A.2d 1086 (1976) ("[a] contract is to be construed according to what may be assumed to have been the understanding and intention of the parties"); *Amalgamated Assn.* v. *Connecticut Co.,* 142 Conn. 186, 192, 112 A.2d 501 (1955) ("[i]n interpreting any contract we must seek the intent of the parties expressed therein"); *Davis* v. *Davis,* 119 Conn. 194, 201, 175 A. 574 (1934) ("[i]t is an accepted principle that where two parties go through the form of entering into a contract, both understanding that there is no intent thereby to incur legal obligations, no contract is in fact created"). This rule allows parties to enter into contractual arrangements with the confidence that they subsequently will not find themselves legally bound to unknown or unanticipated obligations.

The law regarding the creation of contract rights in third parties in Connecticut is equally well settled. In *Knapp* v. *New Haven Road Construction Co.,* 150 Conn. 321, 325, 189 A.2d 386 (1963), we quoted *Colonial Discount Co.* v. *Avon Motors, Inc.,* 137 Conn. 196, 201, 75 A.2d 507 (1950), and reaffirmed that "[t]he ultimate test

to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the *intent of the parties to the contract* was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the *parties.*" (Emphasis added; internal quotation marks omitted.) Although we explained that "it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third party beneficiary"; *Knapp* v. *New Haven Road Construction Co.*, supra, 326; we emphasized that the only way a contract could create a direct obligation between a promisor and a third party beneficiary "would have to be, under our rule, because the parties to the contract so intended." Id.; see also *Congress & Daggett, Inc.* v. *Seamless Rubber Co.*, 145 Conn. 318, 324, 142 A.2d 137 (1958); *Pavano* v. *Western National Ins. Co.*, 139 Conn. 645, 648, 96 A.2d 470 (1953); *Colonial Discount Co.* v. *Avon Motors Inc.*, supra, 200; *Byram Lumber & Supply Co.* v. *Page*, 109 Conn. 256, 260, 146 A. 293 (1929).

The requirement that both contracting parties must intend to confer enforceable rights in a third party rests, in part at least, on the policy of certainty in enforcing contracts. That is, each party to a contract is entitled to know the scope of his or her obligations thereunder. That necessarily includes the range of potential third persons who may enforce the terms of the contract. Rooting the range of potential third parties in the intention of both parties, rather than in the intent of just one of the parties, is a sensible way of minimizing the risk that a contracting party will be held liable to one whom he neither knew, nor legitimately could be held to know, would ultimately be his contract obligee.

We recently reaffirmed this dual intent standard in *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 654 A.2d 342 (1995). Citing to *Knapp* and numerous analogous cases, we held that "[t]he proper test to determine whether a lease creates a third party beneficiary relationship is whether the parties to the lease intended to create a *direct obligation* from one party to the lease to the third party." (Emphasis in original.) Id., 231. The third party beneficiary issue before this court in *Gateway Co.* was whether the trial court correctly had focused on the intent of the parties to confer a benefit on a plaintiff when evaluating the plaintiff's claim as a third party beneficiary under the contract. Id. We held that "[t]he intent to confer a benefit is irrelevant to the determination of whether [the plaintiff] was a third party beneficiary"; id.; rather, the appropriate inquiry is whether "*the parties . . . intended* to create a direct obligation from one party . . . to the third party." (Emphasis added.) Id. Although it was not necessary, in *Gateway Co.*, for us specifically to consider whether the intent of one or both contracting parties is relevant to the determination of third party beneficiary rights, our discussion was based expressly on the premise that it is the intent of *both* parties to a contract that determines these rights. Id.

In *Stowe* v. *Smith*, supra, 184 Conn. 194, decided fourteen years prior to *Gateway Co.*, this court had considered a cause of action brought by a plaintiff against the attorney who had made a mistake in drafting the plaintiff's deceased mother's will. As a result of this mistake, the will in existence at the time of the mother's death incorrectly provided "that when the plaintiff attained the age of fifty or upon his earlier death the principal of the trust would be distributed to his issue." Id., 195. The plaintiff's deceased mother actually had instructed that the will provide "that one-half of her estate be held in trust for the plaintiff; that when the

plaintiff attained the age of fifty the assets of the trust would be distributed to him; but that upon the plaintiff's death prior to attaining the age of fifty, the assets of the trust would be distributed to the plaintiff's issue." Id. According to the complaint, "[t]he defendant [had] informed the mother that he had prepared the will in accordance with her instructions including, specifically, the exact provision she had requested for the plaintiff." Id.

To the extent that a third party to whom a promisor had made no express commitment was held to have stated a cause of action, *Stowe* plausibly could be interpreted as having altered Connecticut law regarding the intent necessary for a third party beneficiary to have enforceable rights under a contract. We conclude, however, that the holding in *Stowe* was consistent with our prior decisions regarding the intent necessary for a third party to possess rights under a contract and, therefore, that the plaintiff's and the Appellate Court's reliance on *Stowe* is misplaced.

Specifically at issue in *Stowe* was the sufficiency of the plaintiff's complaint. The complaint had alleged that "the testatrix and the defendant intended that the defendant, by his agreement to prepare [the testatrix's] will in accordance with her instructions, would assume a direct obligation to the intended beneficiaries of the testatrix." Id., 196. Thus, the underlying premise of the complaint was that both contracting parties intended that the plaintiff would have enforceable rights under the contract. The question before the court was not whether a dual or singular intent was controlling. The question was, instead, the validity of the attorney's argument "that as a matter of law a promisor cannot intend to assume a direct obligation to a third party unless the promisor's performance is to be rendered directly to that party." Id., 197. We rejected that argument, and held that "[c]ontracts for the benefit of a third party

are enforceable without any requirement that the promisor's performance be rendered directly to the intended beneficiary"; id.; and that the plaintiff had enforceable rights under the contract. Id., 198.

Indeed, in *Stowe* we began our analysis of the issue by reaffirming the traditional rule governing the creation of third party beneficiary rights under Connecticut law. "We have stated that a third party seeking to enforce a contract must allege and prove that the *contracting parties intended* that the promisor should assume a direct obligation to the third party." (Emphasis added.) Id., 196. It is true that, in a footnote to this sentence, we referred to the differing views of Professors Corbin and Williston.[16] Contrary to the plaintiff's assertion, however, we do not read that footnote as adopting these views. In fact, the footnote is, at least in part, addressed to the intent necessary for a third party to claim rights as a donee beneficiary,[17] the situation presented in *Stowe*.

---

[16] "Commentators generally look upon the intent of the promisee, if the promisee had any relevant intent, as governing whether a third party may enforce a contract as a donee beneficiary. Restatement (Second), Contracts, c. 6, Introductory Note and § 133 (Tent. Draft 1973); 2 Williston, Contracts (3d Ed.) § 356A, pp. 836, 839 n.19; 4 Corbin, Contracts § 776, p. 16.

"Williston has criticized *Colonial Discount Co.* v. *Avon Motors, Inc.*, [supra, 137 Conn. 196] and *Byram Lumber & Supply Co.* v. *Page*, [supra, 109 Conn. 256] for proposing as a universal test of third party rights the intent of the contracting parties to impose on the promisor a direct obligation to the third party. 2 Williston, [supra] § 356A, pp. 838–39.

"Corbin views the ideas that lie behind such terms as 'purpose,' 'motive,' and 'intention' as obscure and elusive. 4 Corbin, [supra] § 776, pp. 14–15. The problem before the courts, he says, 'is to draw the line between those third persons whose benefit is so indirect and incidental that it is not sound policy to let them enforce the contract, and those other persons whose benefit is so direct and substantial and so closely connected with that of the promisee that it is economically desirable to let them enforce it. The law would profit greatly if the courts would concentrate upon this aspect of the problem and cease to state the questions merely in terms of the supposed "intent" of the parties.' [Id.,] § 786, p. 95." *Stowe* v. *Smith*, supra, 184 Conn. 196–97 n.1.

[17] Third party beneficiaries "can be loosely grouped into two classes; (1) donee beneficiaries, and (2) creditor (or obligee) beneficiaries. The third

Moreover, we disagree with Professor Corbin's view that the concept of "intent" is too "obscure and elusive" to be helpful in determining the contract rights of third parties. 4 A. Corbin, Contracts (1951) § 776, pp. 14–15. We traditionally have relied on the intent of the parties to determine whether a contract has been formed, as well as to determine the meaning of the terms of the contract. See *Davis* v. *Davis*, supra, 119 Conn. 194 (determining whether contract of marriage intended); see also *Amalgamated Assn.* v. *Connecticut Co.*, supra, 142 Conn. 186 (interpreting contractual phrase according to intent of parties); *Finlay* v. *Swirsky*, 103 Conn. 624, 635, 131 A. 420 (1925) (same). We are unpersuaded, therefore, that the concept of intent is any more elusive in the context of determining whether third parties have enforceable rights under the contract.

In support of the view that the presence of a third party beneficiary issue is determined solely by the intention of the promisee, the Appellate Court also relied on 2 Restatement (Second), Contracts § 302 (1981), and concluded that "[t]he notion that the promisor and

---

person is a donee beneficiary if the promisee who buys the promise expresses an intention and purpose to confer a benefit upon him as a gift in the shape of the promised performance. He is a creditor beneficiary if the promisee, or some other person, is under an obligation (a duty or a liability) to him and the contract is so made that the promised performance or the making of the executory contract itself will discharge that obligation." 4 A. Corbin, Contracts (1951) § 774, pp. 6–7.

Relying on the first Restatement of Contracts, the Appellate Court determined that because "Lang's purpose in contracting with the defendants was to fulfill his obligation to the plaintiff to convey an approved building lot to him . . . [and] [t]he evident purpose of the transaction with the defendants was to enable Lang to sell his land to the plaintiff at the enhanced price agreed on for the lot," the plaintiff would qualify as a creditor beneficiary of the contract. *Grigerik* v. *Sharpe*, supra, 45 Conn. App. 781. Because we conclude that both parties must intend an obligation on the part of the promisor to the promisee, and because the jury specifically found that the parties did not intend the promisor to have a direct obligation to the plaintiff, we need not address into which category of beneficiaries the plaintiff would fall.

promisee must share the same intent is at variance with most authorities." *Grigerik* v. *Sharpe*, supra, 45 Conn. App. 784. Our reading of § 302 of the Restatement (Second) does not support that reliance. That provision provides in relevant part: "Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to *effectuate the intention of the parties and* . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." 2 Restatement (Second), supra, § 302 (1) (b). Thus, the language of the Restatement (Second) suggests that the right to performance in a third party beneficiary is determined both by the intention of the contracting parties and by the intention of one of the parties to benefit the third party.

We decline, therefore, to alter our traditional test for determining whether a third party has enforceable contract rights. We reaffirm that the intent of both parties, rather than just one of the parties to a contract, determines whether a third party is to be afforded third party beneficiary status under a contract.

Applying this standard to the facts of the present case, we conclude that the plaintiff cannot prevail on his breach of contract claim. The jurors specifically found that the plaintiff had not proven that he was an intended beneficiary of the contract between Lang and the defendants. See footnote 15 of this opinion. The plaintiff, therefore, did not establish that it was the intent of the parties that he be a third party beneficiary of the contract.

Although the jury found that the plaintiff was a foreseeable beneficiary of the contract, we agree with the Appellate Court that foreseeability is a tort concept, and the fact that a person is a foreseeable beneficiary

of a contract is not sufficient for him to claim rights as a third party beneficiary. To import the concept of foreseeability into the law governing contracts, which is premised "on the concept that mutual obligations entered into voluntarily should be enforced," would significantly reduce contracting parties' ability to control, through the negotiated exchange of promises and consideration, the scope of their contractual duties and obligations.

With respect to the negligence count, the judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the defendants' claim that the trial court abused its discretion in permitting the plaintiff to amend his complaint after the jury had been selected; in the event that the Appellate Court finds no abuse of discretion, that court is directed to affirm the judgment of the trial court on the negligence count. With respect to the breach of contract count, the judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand it to the trial court with direction to render judgment for the defendants on that count.

In this opinion the other justices concurred.