******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOANN ANDERSON *v.* TOWN OF
BLOOMFIELD ET AL.
(AC 42905)

Bright, C. J., and Prescott and Flynn, Js.

*Syllabus*

The plaintiff sought to recover damages caused by an allegedly defective
roof installed by the defendant P Co. The defendant town of Bloomfield
had hired P Co. to install a new roof on the plaintiff's home pursuant to
a residential rehabilitation program, whereby the town offered financial
assistance for home improvements to qualified homeowners. Under
the program, the town acted on behalf of the homeowner to secure
appropriate contractors to do the work and entered into all necessary
contracts. P Co. completed work on the plaintiff's roof in July, 2013,
and was paid by the town. In October, 2013, the plaintiff noticed water
entering her home and an inspection determined that P Co. had installed
a defective roof. The plaintiff brought this action alleging in part that
P Co. breached its contract to the town when it installed a defective
roof and that she was a third-party beneficiary of the contract. The trial
court granted P Co.'s motion to dismiss, and rendered judgment thereon,
from which the plaintiff appealed to this court. *Held* that the trial court
improperly dismissed the plaintiff's action for lack of standing, that
court having improperly determined that the plaintiff was not a third-
party beneficiary of the contract: because the language of the contract
was ambiguous as to whether the town and P Co. intended for the
plaintiff to be a third-party beneficiary of that contract, it was a question
for the ultimate fact finder and, thus, the question of whether the plaintiff
had standing as a third-party beneficiary could not be resolved without
an evidentiary hearing and, because resolution of the factual issue is
intertwined with the merits of the case, resolution of this jurisdictional
question should be resolved by the ultimate fact finder as part of the
trial on the merits; accordingly, this court reversed the judgment of the
trial court and remanded this case for further proceedings.

Argued November 12, 2020—officially released March 9, 2021

*Procedural History*

Action to recover damages for, inter alia, breach of
contract, and for other relief, brought to the Superior
Court in the judicial district of Hartford, where the
court, *Gordon, J.*, granted the motion to dismiss filed by
the defendant Plourde Enterprises, LLC, and rendered
judgment thereon, from which the plaintiff appealed to
this court. *Reversed; further proceedings*.

*Jeremy S. Donnelly*, for the appellant (plaintiff).

*Deborah Etlinger*, with whom, on the brief, was *Erin
Canalia*, for the appellee (defendant Plourde Enter-
prises, LLC).

*Opinion*

BRIGHT, C. J. In this third-party beneficiary breach of contract case, the plaintiff, Joann Anderson, appeals from the judgment of the trial court dismissing her complaint against the defendant Plourde Enterprises, LLC,[1] on the ground that she lacks standing to pursue the action. On appeal, the plaintiff claims that the court erred in concluding that she was not an intended third-party beneficiary of a contract between the defendant and the town of Bloomfield (town), to whom the defendant owed a direct obligation. She argues that the contract at issue, at the very least, was ambiguous as to the intent of the defendant and the town and, therefore, the court should have reserved this question for the fact finder. We agree with the plaintiff and, accordingly, reverse the judgment of the trial court.

The following relevant facts, as alleged by the plaintiff in her complaint, and procedural history are relevant to our consideration of the plaintiff's claim on appeal. The plaintiff owns a single-family home in the town, which has been her family home for twenty years. Her home was in need of a new roof, and the plaintiff investigated a number of contractors that could perform the work. She also began looking at financing options. The plaintiff learned that the town offered financial assistance for home improvements to qualified homeowner residents, at no immediate cost to the homeowner, through a residential rehabilitation assistance program (program). Under the program, the town acted on behalf of the homeowner to secure appropriate contractors to do the work. The town would enter into all necessary contracts in order to facilitate the projects, and it would be responsible for review and payment to the contractors once the work was completed. In exchange, the homeowner had to agree to a lien in the town's favor on his or her property in an amount equal to what the town paid for the work completed. The financial assistance offered through the program carried no interest, and no payments were due from the homeowner until he or she decided to sell or transfer title to the property.

Having recently been laid off from her employment and working only a part-time job, the plaintiff, on or about November 28, 2012, applied for the program. She provided detailed information about her income and assets, and, on January 7, 2013, the plaintiff was approved for the program. The town contracted with the defendant to install, inter alia, a new roof on the plaintiff's home. The agreement between the town and the defendant was entered into on or about May 20, 2013. The town agreed to pay the defendant $12,000 for the plaintiff's new roof.

In June, 2013, the defendant began work on the plaintiff's roof, and it completed the work the following

month. The town paid the defendant the contract price. In October, 2013, the plaintiff noticed water entering her home through the walls and ceiling in her kitchen and in the basement. The plaintiff's home was inspected, and it was determined that the defendant had installed a defective roof. As a result, it was recommended that the roof be completely replaced. The plaintiff notified the town in October, 2013, through e-mail, telephone, and in person.

As water continued to enter the home because of the faulty roof installation, the walls and ceilings sustained damage, and a significant amount of mold began to grow in the attic and in other parts of the home. Damage to other parts of the home also occurred because of the excessive moisture in the walls, including the malfunction of a wall oven and the electrical wiring in the kitchen. The damage to the plaintiff's home made it uninhabitable, and the plaintiff was forced to move out of her family home.

In a complaint filed on July 17, 2018, the plaintiff claimed in relevant part that the defendant was in breach of its contract with the town and that the plaintiff was a third-party beneficiary of that contract. She alleged that when the defendant entered into its contract with the town, it assumed a direct obligation to the plaintiff to provide a serviceable roof to her home, and that the defendant knew that its failure to do so would cause direct harm to the plaintiff. She further alleged that the defendant breached its contract when it installed a defective roof, causing her to sustain damages.

On September 28, 2018, the defendant filed a motion to dismiss the plaintiff's complaint on the ground that the plaintiff did not have standing as a third-party beneficiary of the town's contract with the defendant and that the court, therefore, did not have jurisdiction over the case. The defendant's motion was accompanied by a memorandum in support and the affidavit of Jason Plourde, the defendant's managing member. Attached to Plourde's affidavit as exhibit 1 was the contract between the town and the defendant. Included as part of the contract were addenda setting forth general and supplementary conditions and the defendant's bid prices for the work described in the contract.

On April 18, 2019, the court, agreeing with the defendant, rendered judgment dismissing the plaintiff's complaint. Specifically, the court concluded that, even if the plaintiff was a foreseeable beneficiary of the contract between the defendant and the town, "that is insufficient to provide the plaintiff with standing to assert a claim against [the defendant] as a third-party beneficiary of the contract." The court reasoned that "[a] careful review of the contract between [the defendant] and the town indicates that the plaintiff is not a third-party beneficiary . . . because, although the plaintiff's

home is specifically referenced in the contract, and although the purpose of the contract includes, inter alia, performing work on the plaintiff's home, there is no expressed intent to create an obligation on the part of [the defendant] directly to the plaintiff. Instead, all of the contract terms were negotiated with the town, including the liquidated damages provision and the limitation on assignments. . . . [I]t is incumbent on the plaintiff to identify specific language in the contract evidencing [the defendant's] intent to create a direct obligation to her. The court cannot identify any such language in the contract." This appeal followed.

On appeal, the plaintiff claims that the court improperly concluded that she was not an intended third-party beneficiary to whom the defendant owed a direct obligation. She argues that the contract establishes that she is a third-party beneficiary because she is *the intended beneficiary* of the work that the defendant contracted to perform and because her address is listed in the contract in two places. The plaintiff "concedes that a reasonable opposing position [however] might be that the contract language is ambiguous on this point" and that "the issue [therefore] is for the fact finder." The defendant argues that the court properly determined that the plaintiff lacks standing to bring this action because the plaintiff was neither a party to the contract nor an intended third-party beneficiary under the language of the contract. We conclude that the contract is ambiguous as to whether the town and the defendant intended the plaintiff to be a third-party beneficiary to the contract and that, therefore, the issue properly cannot be resolved based on the defendant's motion and the documents attached thereto. Instead the issue requires an evidentiary hearing before the ultimate fact finder at which the fact finder can consider the parties' intent, in light of the circumstances surrounding the making of the contract, including the motives and purposes of the parties.

The standard of review on a challenge to the trial court's granting of a motion to dismiss is well established. "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Chiulli* v. *Zola*, 97 Conn. App. 699, 703–704, 905 A.2d 1236 (2006).

"It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion. One

cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . It is well settled that one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract . . . . [W]hether a party has standing, based upon a given set of facts, is a question of law for the court . . . and in this respect the label placed on the allegations by the parties is not controlling." (Citations omitted; internal quotation marks omitted.) *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 579–80, 833 A.2d 908 (2003).

Where, as here, the motion to dismiss is supported by an affidavit and the contract central to the dispute, the court may consider supplementary *undisputed* facts contained in those documents in deciding the motion to dismiss. "If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein. . . .

"[Furthermore] where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits. . . . An evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties. . . . [D]efendants' states of mind and motives [are] facts that . . . are not ordinarily subject to determination on the basis of documentary proof alone." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 652–54, 974 A.2d 669 (2009); id., 654 (issue of sovereign immunity could not be resolved on motion to dismiss because state's argument "turned on [the] particular resolution of [a] factual dispute" requiring "a full trial on the merits of the action"); see *Giannoni* v. *Commissioner of Transportation*, 322 Conn. 344, 355 n.12, 141 A.3d 784 (2016) (when evidence necessary to court's determination of jurisdiction requires weighing by fact finder, issue may be "more appropriate for consideration at trial").

"The [third-party] beneficiary doctrine provides that [a] [third-party] beneficiary may enforce a contractual obligation without being in privity with the actual parties to the contract. . . . Therefore, a [third-party] beneficiary who is not a named obligee in a given contract may sue the obligor for breach." (Internal quotation marks omitted.) *Wykeham Rise, LLC* v. *Federer*, 305 Conn. 448, 473, 52 A.3d 702 (2012). "[A] third party seeking to enforce a contract must allege and prove that the contracting parties intended that the promisor should assume a direct obligation to the third party." *Stowe* v. *Smith*, 184 Conn. 194, 196, 441 A.2d 81 (1981). "[T]he fact that a person is a foreseeable beneficiary of a contract is not sufficient for him to claim rights as a [third-party] beneficiary. . . . Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary . . . no duty to him is created." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Hilario's Truck Center, LLC* v. *Rinaldi*, 183 Conn. App. 597, 604, 193 A.3d 683, cert. denied, 330 Conn. 925, 194 A.3d 776 (2018).

"Section 302 of 2 Restatement (Second) of Contracts (1981) defines intended and incidental beneficiaries as follows:

"(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

"(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

"(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

"(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary." (Internal quotation marks omitted.) Id., 604 n.5.

"The law regarding the creation of contract rights in third parties in Connecticut is . . . well settled. . . . [T]he ultimate test to be applied [in determining whether a person has a right of action as a third-party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the [third-party] [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. . . . [I]t is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed [third-party] beneficiary . . . . [T]he only way a contract could create a direct obligation between a promisor and a [third-party] beneficiary would have to be, under our rule, because the

parties to the contract so intended. . . .

"The requirement that both contracting parties must intend to confer enforceable rights in a third party rests, in part at least, on the policy of certainty in enforcing contracts. That is, each party to a contract is entitled to know the scope of his or her obligations thereunder. That necessarily includes the range of potential third persons who may enforce the terms of the contract. Rooting the range of potential third parties in the intention of both parties, rather than in the intent of just one of the parties, is a sensible way of minimizing the risk that a contracting party will be held liable to one whom he neither knew, nor legitimately could be held to know, would ultimately be his contract obligee." (Citations omitted; internal quotation marks omitted.) *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, supra, 266 Conn. 580–81. Where the language of the contract is unambiguous, "a proper analysis of the language at issue is not dependent on extrinsic evidence of the parties' intent. See *Parisi* v. *Parisi*, 315 Conn. 370, 383, 107 A.3d 920 (2015) ('[w]hen only one interpretation of the contract is possible, the court need not look outside the four corners of the contract' . . .)." *Raczkowski* v. *McFarlane*, 195 Conn. App. 402, 411 n.4, 225 A.3d 305 (2020).

In the present case, the contract between the town and the defendant is made up of the following contract documents: the agreement, the supplementary conditions, the general conditions, the addenda (if any), and the defendant's bid. The agreement provides in relevant part that the defendant "shall complete all [w]ork as specified . . . in the [c]ontract [d]ocuments,[2] including all necessary incidental work. The purpose of the project is miscellaneous residential upgrades at [four residential addresses, including the plaintiff's address]." (Footnote added.) The agreement requires that all work be completed within sixty days. It also contains a liquidated damages provision that includes a "time is of the essence" clause, requiring the defendant to pay to the town $500 each day that the work is incomplete after the sixty day time period. The agreement also provides that the town will pay the defendant $12,000 for the work to be done to the plaintiff's property, and it provides a mechanism for progress payments.

Also in the agreement are several representations of the defendant, including that the defendant has studied the contract documents and other data identified in the bidding documents, it has visited the work sites and become familiar with them, and it does not believe any further information or examination is necessary in order for it to complete the project. The agreement further provides that the rights and obligations under it cannot be assigned without the consent of the other party and that the defendant and the town "each binds itself and its partners, successors, assigns, and to the

other party hereto and its partners, successors and assigns in respect of all covenants, agreements, and obligations contained in the [c]ontract [d]ocuments." In the agreement, the defendant also agrees to comply with all federal, state, and local laws, and all rules, regulations, and ordinances of the town that may affect the work or services rendered by the defendant.

In the supplementary conditions, there is, inter alia, an indemnification provision that provides that the defendant will indemnify and hold harmless the town from any and all claims made against it to the extent that any claim directly and proximately results from the wrongful, wilful, or negligent performance of the defendant during its performance of the agreement. In the general conditions,[3] the defendant, among other things, is prohibited from placing a lien on any property on which it is working under the agreement.

The plaintiff argues that, although the defendant and the town were the parties to the contract, the contract was meant to benefit the plaintiff. "The town's role was only to facilitate the work and to pay the defendant from funds made available through the program. No services were provided to the town [and] the intended beneficiary was [the plaintiff] . . . ." She argues that, unlike the plaintiff in *Grigerik* v. *Sharpe*, 247 Conn. 293, 721 A.2d 526 (1998), a case relied on by the defendant and the trial court, she is not merely a *foreseeable beneficiary*, but, rather, she is "*the* beneficiary—the person to whom all obligations under the contract were owed." (Emphasis in original.) She also argues that if the intent of the contracting parties cannot be ascertained from the contract alone, the court should have reserved the question for the fact finder.

In *Grigerik*, the plaintiff, who was the purchaser of a property, brought breach of contract and negligence claims against the defendants, an engineering company and its owner, who had been hired by the plaintiff's predecessor in title to test soil and design a septic system for the property. Id., 296. The plaintiff alleged that he was a foreseeable third-party beneficiary to the contract. Id. The jury found in favor of the plaintiff, concluding that he was a foreseeable beneficiary of the contract although not an intended beneficiary, and the court rendered judgment in accordance with the verdict. Id. After the Appellate Court reversed that judgment and ordered, in part, a new trial on the breach of contract count, our Supreme Court, after granting certification to appeal, held in relevant part that the fact that the plaintiff may have been a foreseeable beneficiary of the contract between the plaintiff's predecessor in title and the defendants was inconsequential to whether he was a third-party beneficiary to the contract. Id., 309–10.

Our Supreme Court specifically quoted and relied on § 302 of the Restatement (Second), which provides in

relevant part: "Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." (Emphasis omitted; internal quotation marks omitted.) Id., 317. The court explained that "the language of the Restatement (Second) suggests that the right to performance in a [third-party] beneficiary is determined both by the intention of the contracting parties and by the intention of one of the parties to benefit the third party." Id. The court held, therefore, that the intent of both parties to the contract determines whether a third party is entitled to third-party beneficiary status, and the fact that the plaintiff in that case may have been a foreseeable beneficiary of the contract was not sufficient to confer third-party beneficiary status on him because the jury specifically had found that the plaintiff was not an intended beneficiary of the contract. Id., 317–18. We agree with the plaintiff that *Grigerik* is inapposite. The issue of the intent of the town and the defendant in the present case has not been presented to a jury as it was in *Grigerik*. Rather, in the present case, the court ruled as a matter of law that the plaintiff did not have standing because there was no "specific language in the contract evidencing [the defendant's] intent to create a direct obligation to her." Such specific language, however, is not necessary. See *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, supra, 266 Conn. 580–81.

We, instead, are guided by our Supreme Court's decision in *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 654 A.2d 342 (1995). In *Gateway Co.*, the trial court had concluded that the plaintiff, The Gateway Company (Gateway), was not a third-party beneficiary because "there was nothing to indicate either that [the original parties to the lease had] intended to *confer a benefit* upon Gateway, or that they [had] intended to give Gateway a right to sue [the defendant] DiNoia." (Emphasis in original; internal quotation marks omitted.) Id., 230. Our Supreme Court concluded that the trial court had "focused on the wrong inquiry," explaining that "[t]he proper test to determine whether a lease creates a [third-party] beneficiary relationship is whether the parties to the lease intended to create a direct obligation from one party to the lease to the third party." (Emphasis omitted.) Id., 231. The court further explained that, "[a]lthough ordinarily the question of contractual intent presents a question of fact for the ultimate fact finder," where, as in *Gateway Co.*, the language of the contract is clear and unambiguous "it becomes a question of law for the court." (Internal quotation marks omitted.) Id., 232.

In the present case, we conclude that the trial court also misconstrued the appropriate inquiry when it deter-

mined that the plaintiff failed to establish standing simply because there was no "specific language in the contract evidencing [the defendant's] intent to create a direct obligation to her." A review of the contract documents reveals that there also is no specific language in the contract evidencing the defendant's intent that it have no direct obligation to the plaintiff. The contract did provide, however, that the defendant would install a new roof on the plaintiff's home and that the defendant would comply with applicable laws, regulations and ordinances. The identification of the plaintiff's home as the location where the work is to be done can be read as evidencing an intent that she is a third-party beneficiary of the contract. At the same time, the fact that the contract provides rights to review the work performed by the defendant and remedies for breach of the defendant's obligations solely to the town can be read as evidencing the parties' intent that the plaintiff is not a third-party beneficiary. The court failed to consider these competing interpretations when it focused its inquiry singularly on whether there was express language in the contract creating a direct obligation from the defendant to the plaintiff.

Given that it is unclear from the terms of the agreement between the town and the defendant whether they intended the plaintiff to be a third-party beneficiary of their contract, the court also failed to consider the terms of the contract "in the light of the circumstances attending its making, including the motives and purposes of the parties." (Internal quotation marks omitted.) *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, supra, 266 Conn. 580–81.[4] Consequently, this is not a case in which the defendant's motion to dismiss can be decided simply on the basis of the affidavit submitted by the defendant and the language of the contract. Instead, an evidentiary hearing is required to make the critical factual finding as to whether the plaintiff has standing as a third-party beneficiary. See *Conboy* v. *State*, supra, 292 Conn. 653–54. Furthermore, because resolution of this factual issue is intertwined with the merits of the case, resolution of this jurisdictional question should be resolved by the ultimate fact finder as part of the trial on the merits. Id.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

[1] The plaintiff also named as a defendant the town of Bloomfield. Before the court rendered a judgment of dismissal, however, the plaintiff withdrew her claims against the town. For purposes of this appeal, we refer to Plourde Enterprises, LLC, as the defendant.

[2] Only one page of the bidding documents is in the record. This page lists each address for which the defendant was submitting a bid, and it separately lists the bid for each individual aspect of each home address. For example, for the plaintiff's address, the defendant set forth her street with the description "roof" and a bid of $12,000. For a property on Brooke Street, it listed "insulation" with a bid of $5600, and it listed "flooring" with a bid of $7800.

[3] The general conditions are set forth in a document prepared by the United States Department of Housing and Urban Development.

[4] Although the terms of the program, including the requirement that the plaintiff agree that the town could place a lien on her property in the amount that the town had paid to complete repairs to her roof, evidence circumstances strongly indicative of the town's intent to make the plaintiff an intended third-party beneficiary of the contract, whether the defendant was aware of the program and shared the same intent is less clear.

---