PLATO ASSOCIATES, LLC *v.* ENVIRONMENTAL COMPLIANCE SERVICES, INC., ET AL.
(SC 18404)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued December 2, 2009—officially released November 9, 2010

*Nicholas J. Harding*, with whom, on the brief, was *Justin M. Pawluk*, for the appellant (plaintiff).

*Sean C. Joanis*, for the appellees (defendants).

*Opinion*

PALMER, J. Under General Statutes § 52-584a (a),[1] no action against an architect, professional engineer or land surveyor to recover damages for any defect in the design, planning or construction of an improvement to real property may be brought more than seven years after substantial completion of such improvement. The plaintiff, Plato Associates, LLC, appeals[2] from the judgment of the trial court rendered in favor of the defen-

---

[1] General Statutes § 52-584a (a) provides: "No action or arbitration, whether in contract, in tort, or otherwise, (1) to recover damages (A) for any deficiency in the design, planning, contract administration, supervision, observation of construction or construction of, or land surveying in connection with, an improvement to real property; (B) for injury to property, real or personal, arising out of any such deficiency; (C) for injury to the person or for wrongful death arising out of any such deficiency, or (2) for contribution or indemnity which is brought as a result of any such claim for damages shall be brought against any architect, professional engineer or land surveyor performing or furnishing the design, planning, supervision, observation of construction or construction of, or land surveying in connection with, such improvement more than seven years after substantial completion of such improvement."

[2] The plaintiff appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

dants, Environmental Compliance Services, Inc. (ECS), and its manager, Michael E. Hopkins. The plaintiff contends that the trial court incorrectly concluded, first, that the limitation period contained in § 52-584a (a) is inapplicable to its breach of contract and negligence claims against the defendants and, second, that the plaintiff's claims are time barred by the statutes of limitation applicable generally to breach of contract and negligence claims. We conclude that the limitation period of § 52-584a (a) applies to the plaintiff's claims and, further, that the defendants have failed to establish that the plaintiff's claims are untimely under that statute. Accordingly, we reverse the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. In 2000, the plaintiff applied for a loan from New Haven Savings Bank (bank) to finance the acquisition of and improvements to real property located at 4 Pin Oak Drive[3] in the town of Branford (town). As a condition of the loan, the bank required an environmental site assessment (assessment) of the property so it could be determined whether the property constituted an "establishment" under the Connecticut Transfer Act (act), General Statutes § 22a-134 et seq.[4] The plaintiff subse-

---

[3] We hereinafter refer to this particular property as the property throughout this opinion.

[4] "The [act] subjects transferors of establishments to reporting, investigation and remediation requirements that depend on the environmental condition of the property being transferred. See General Statutes § 22a-134a. The transferor makes the report on one of several forms, which are defined terms under the statute as Forms I, II, III and IV. See General Statutes § 22a-134 (10) through (13) (defining form contents)." (Internal quotation marks omitted.) *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 272 Conn. 14, 40, 861 A.2d 473 (2004).

General Statutes § 22a-134 (3) defines "establishment" as "any real property at which or any business operation from which (A) on or after November 19, 1980, there was generated, except as the result of remediation of polluted soil, groundwater or sediment, more than one hundred kilograms of hazardous waste in any one month, (B) hazardous waste generated at a different location was recycled, reclaimed, reused, stored, handled, treated, trans-

quently entered into a contract with ECS to conduct an assessment of the property, the purpose of which was "to identify and record existing, potential or suspected conditions that may impose an environmental liability to, or restrict the use of, the [property]." The assessment included subsurface sampling of soil and water to determine if oil or other hazardous materials were present. As part of the assessment, the defendants made five borings on the property and, on September 19, 2000, installed two monitoring wells to evaluate the quality of subsurface soil and water. The wells were constructed of polyvinyl chloride (PVC) screen and casing pipes that were two inches in diameter, and the wellheads were described as "finished protective steel hand boxes in concrete collars." (Internal quotation marks omitted.)

On January 18, 2001, ECS issued a report, which was signed by Hopkins, a licensed professional engineer, in which the defendants concluded that the property was not an "establishment," as that term is defined under the act.[5] In reliance on the report, the plaintiff purchased

---

ported or disposed of, (C) the process of dry cleaning was conducted on or after May 1, 1967, (D) furniture stripping was conducted on or after May 1, 1967, or (E) a vehicle body repair facility was located on or after May 1, 1967 . . . ."

[5] The report provided in relevant part: "The [property] does not appear to be an [e]stablishment (subject to the [act]). Based on these findings, the overall environmental risk associated with the [property] appears to be low. No additional investigation is recommended at this time." The report further provided: "The phase I portion of this assessment was performed in accordance with American Society for Testing and Materials Standard E1527-00 . . . and the Connecticut Transfer Act Site Assessment Guidance Document. The phase II portion included the collection and analysis of six soil samples. The scope of this assessment included:

"[1] visually inspecting the property,

"[2] reviewing 'standard' published state and federal environmental site inventories and databases . . .

"[3] reviewing historic aerial photographs, Sanborn Fire Insurance Company maps, and published city street directories,

"[4] searching [state department of environmental protection] files pertaining to the [property] and selected abutting properties, including the

the property and closed on a construction mortgage in the amount of $2,833,000. The first advancement under the loan totaled $1,952,000, which went toward the purchase of the property. At the time of the purchase, buildings and other improvements on the property were under construction or in the process of repair. Under the terms of the loan, the bank agreed to make advances of principal on the loan as the work progressed, and once all of the work had been completed to the bank's satisfaction, the bank was to pay the balance necessary to cover the full loan amount, or such lesser amount as might be required to cover the cost of the completed improvements.[6] In April, 2007, the defendants, in connection with a refinancing of the property, informed the plaintiff that they had discovered records indicating that thousands of gallons of hazardous waste had been generated on the property by a previous tenant and that, contrary to their earlier assessment, the property was in fact an "establishment" within the meaning of § 22a-134 (3).

The plaintiff commenced this action on August 31, 2007, claiming that the defendants had breached the parties' contract and that they had been negligent in their performance of the 2000 environmental assessment by failing to identify the property as an establish-

following programs: Waste Engineering and Enforcement Division, Permitting, Enforcement and Remediation Division, Underground Storage Tank Bureau, Hazardous Waste Manifest Program, and Water Compliance Unit,

"[5] reviewing public records at the [town] [c]onservation [d]epartment, [f]ire [m]arshall's office, [engineer's office], [c]lerk's office and tax assessor's office . . .

"[6] reviewing published or publicly available background information sources (soil surveys, water quality maps, topographic maps, geological references, wetland maps, etc.), and

"[7] collecting and analyzing soil samples from six borings."

[6] We note that the sparse record in this case contains no explanation of the status or nature of the improvements that the plaintiff has made to the property since it was purchased. Nevertheless, the defendants do not dispute that such improvements have been made.

ment. The defendants filed a motion for summary judgment, claiming that the plaintiff's breach of contract claims were barred[7] by the six year limitation period contained in General Statutes § 52-576 (a)[8] and that its negligence claims were barred by the respective three and two year limitation periods of General Statutes §§ 52-577[9] and 52-584.[10]

In response to the defendants' motion for summary judgment, the plaintiff maintained, contrary to the position advanced by the defendants, that the seven year limitation period of § 52-584a (a) applies to all of the plaintiff's claims because the defendants had performed professional services in connection with improvements to real property. In particular, the plaintiff asserted that the defendants' services were performed in connection with the plaintiff's purchase of and subsequent improvements to the property and with the improvements to the property that the defendants themselves made on September 19, 2000, when they installed two monitoring wells to evaluate the environmental condition of the

---

[7] Hopkins also claimed in the motion that he was entitled to summary judgment on the breach of contract claim on the ground that he never had entered into a contract with the plaintiff. The plaintiff did not oppose the granting of summary judgment with respect to its breach of contract claim to the extent that such claim pertained to Hopkins' performance in an individual capacity.

[8] General Statutes § 52-576 (a) provides in relevant part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

[9] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[10] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

property. The plaintiff maintained, therefore, that the seven year limitation period of § 52-584a (a) began to run, at the earliest, on September 19, 2000, and, consequently, its action, which had been commenced on August 31, 2007, was timely. In support of its contention, the plaintiff submitted the affidavit of Richard Perlman, then the president of Zaragon Holdings, Inc., the company that managed the plaintiff, stating that the defendants had installed the two monitoring wells on the property on September 19, 2000. In his affidavit, Perlman also stated that the monitoring wells and the assessment report were integral to the plaintiff's subsequent acquisition of and improvements to the property because, without the report, the bank would not have agreed to finance the purchase and improvements.

The defendants countered that § 52-584a (a) did not apply to the plaintiff's claims because (1) the defendants had not provided professional engineering services as contemplated by the statute, and (2) the defendants' activities were not performed in connection with an improvement to real property within the meaning of § 52-584a (a). In support of their contentions, the defendants relied on the affidavit of Hopkins, in which he stated that "[t]he . . . [a]ssessment did not involve any professional engineering services" or "improvement[s]" to the property. Rather, the sole purpose of the . . . [a]ssessment was to identify and record existing, potential or suspected conditions that may impose an environmental liability to, or restrict the use of, the property. The sole purpose of the monitoring wells and borings, both intended to be temporary structures, was to accomplish the overall purpose of . . . [the environmental assessment]. Neither the monitoring wells nor the borings increased [the] value [of] the property."

The trial court granted the defendants' motion for summary judgment. In doing so, the court rejected the defendants' first contention, namely, that the defen-

dants had not provided professional engineering services, concluding, rather, that the affidavits and other materials submitted by the parties in connection with the summary judgment motion gave rise to a genuine issue of material fact concerning that claim. The court agreed, however, with the defendants' second contention that their activities were not performed in connection with an improvement to real property within the meaning of § 52-584a (a). Relying on this court's decision in *Grigerik* v. *Sharpe*, 247 Conn. 293, 721 A.2d 526 (1998), the trial court stated: "Only if the improvement [to] real property contemplated by the defendants' services is not completed because of the defect complained of by the plaintiff does § 52-584a [a] apply to the plaintiff's cause of action." The court concluded that, because the plaintiff had adduced no evidence to demonstrate that an improvement to property could not be completed as a result of the defendants' allegedly improper conduct, § 52-584a (a) did not apply to the plaintiff's claims. This appeal followed.

The plaintiff contends that the trial court properly concluded that there exists a genuine issue of material fact as to whether the defendants provided professional engineering services in performing the assessment in 2000 but that the court misinterpreted *Grigerik* in concluding that the defendants' services were not performed in connection with an improvement to real property within the meaning of § 52-584a (a). In support of the latter claim, the plaintiff contends that the defendants' services were performed not only in connection with improvements to the property that the plaintiff itself undertook but also in connection with the defendants' installation of the two monitoring wells. The defendants do not defend the trial court's reading of *Grigerik*[11] but claim, instead, that the judgment of the

[11] We agree with the plaintiff that the trial court misinterpreted *Grigerik* in concluding that the defendants were entitled to summary judgment. In *Grigerik*, we were required to determine whether § 52-584a applies to an

trial court may be affirmed on the alternative ground that, contrary to the conclusion of the trial court, the evidence definitively establishes that the defendants provided no professional engineering services to the plaintiff. The defendants also raise two additional alternative grounds for affirming the trial court's judgment: (1) the services they performed were not rendered in connection with an improvement to real property, as § 52-584a (a) requires, but, rather, in connection with the plaintiff's application for a bank loan; and (2) con-

---

action against an engineer for negligent design of a septic system and negligent soil testing even though the septic system never was built. See *Grigerik* v. *Sharpe*, supra, 247 Conn. 305–306. On appeal, the defendant, Gary Sharpe, claimed that the statute did not apply in such circumstances because there was no improvement to real property from which the seven year limitation period could run. Id., 305. Although we disagreed, we explicitly stated that "the statute contemplates a completed 'improvement' to real property *in its principal application.* [Specifically, §] 52-584a (c) provides in relevant part that 'an improvement to real property shall be considered substantially complete when (1) it is first used by the owner or tenant thereof or (2) it is first available for use after having been completed in accordance with the contract or agreement covering the improvement . . . .' " (Emphasis added.) Id., 306. "In the ordinary case, therefore, the seven year statute of limitations begins to run from the date of the substantial completion of the improvement for which the architect or engineer performed the services." Id., 307. We further explained that, if "the proposed septic system that was the subject of [Sharpe's] services [had] been installed, the seven years would have begun to run from the date when the system was first used or available for use." Id. As we went on to say in *Grigerik*, however, that case "present[ed] the question of whether § 52-584a applies to a situation in which the defect in the professional services rendered was discovered before the intended improvement was begun, and the reason the improvement was not and could not be effectuated was precisely because of that defect." Id.

In light of our discussion in *Grigerik*, it is abundantly clear that § 52-584a (a) applies principally when the intended improvement to real property *is completed* and that the seven year limitation period begins to run upon substantial completion of that improvement. We therefore agree with the plaintiff that the trial court improperly granted the defendants' motion for summary judgment on the ground that the plaintiff was required but failed to allege and prove that an improvement to property could not be completed as a result of the defendants' alleged negligence and breach of contract. Indeed, as we previously have indicated, the defendants do not contend otherwise.

trary to the contention of the plaintiff, the monitoring wells did not constitute improvements to property within the meaning of the statute. We agree with the plaintiff that the trial court properly determined that there is a genuine issue of material fact as to whether the defendants performed professional engineering services for the plaintiff that fall within the purview of § 52-584a (a). Because we also reject the defendants' alternative grounds for affirmance, we conclude that the trial court improperly determined that the defendants were entitled to summary judgment.

We begin our analysis with the well established standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant [the defendants'] motion for summary judgment is plenary. . . . Issues of statutory construction . . . are also matters of law subject to our plenary review." (Citation omitted; internal quotation marks omitted.) *Rodriguez* v. *Testa*, 296 Conn. 1, 6–7, 993 A.2d 955 (2010).

Section 52-584a (a) provides in relevant part: "No action . . . (1) to recover damages (A) for any deficiency in the design, planning, contract administration, supervision, observation of construction or construction of, or land surveying in connection with, an improvement to real property . . . shall be brought against any architect, professional engineer or land sur-

veyor performing or furnishing the design, planning, supervision, observation of construction or construction of, or land surveying in connection with, such improvement more than seven years after substantial completion of such improvement. . . ." Thus, by its plain terms, § 52-584a (a) applies to any action for damages against an architect, a professional engineer or a land surveyor for deficiencies in, among other things, the design, planning, supervision or construction of an improvement to real property. We conclude that whether the plaintiff's claims fall within the purview of § 52-584a (a) is a disputed factual issue that is not appropriate for summary judgment.

We first address the defendants' claim that the trial court improperly concluded that there is a genuine issue of material fact as to whether their services constituted professional engineering services. The defendants contend that the trial court improperly determined that Hopkins' status as a professional engineer was sufficient to raise a disputed factual issue as to whether the defendants' services constituted professional engineering services so as to bring the plaintiff's claims within the purview of § 52-584a (a). In support of this claim, the defendants rely on the affidavit of Hopkins, in which he states that the assessment of the property "did not involve any professional engineering services."

The plaintiff contends that the trial court properly determined that there is a genuine issue of material fact concerning whether the defendants' services involved professional engineering services because Hopkins, who manages ECS, reviewed the final report and represented himself in that report as a professional engineer. The plaintiff further contends that the defendants' assessment of the property, as well as the services performed in connection therewith, falls within the scope of the work done by a "professional engineer," as that term is defined statutorily, and, consequently, there

exists a genuine issue of material fact as to whether the defendants' services constituted professional engineering services for purposes of § 52-584a (a). We agree with the plaintiff.[12]

Under General Statutes § 20-299 (1), a "professional engineer" is defined as "a person who is qualified by reason of his knowledge of mathematics, the physical sciences and the principles of engineering, acquired by professional education and practical experience, to engage in engineering practice, including rendering or offering to render to clients any professional service such as consultation, investigation, evaluation, planning, design or responsible supervision of construction, in connection with any public or privately-owned structures, buildings, machines, equipment, processes, works or projects in which the public welfare or the safeguarding of life, public health or property is concerned or involved . . . ."[13] In light of the broad nature of the work done by professional engineers, which includes "consultation, investigation, evaluation, plan-

[12] We note that both the defendants and the plaintiff agree that, in order for § 52-584a to apply to the plaintiff's claims, the plaintiff must establish that the defendants' services constituted professional engineering services. We do not read the statutory language as imposing such a requirement. Rather, as we previously have explained, the statute authorizes actions against "professional engineer[s]" for deficiencies in the "the design, planning, contract administration, supervision, observation of construction or construction of, or land surveying in connection with, an improvement to real property . . . ." General Statutes § 52-584a (a). There is no requirement that the services performed by the engineer constitute professional engineering services. On appeal, however, both the defendants and the plaintiff have framed the issue before this court as requiring a determination of whether the trial court properly determined that a genuine issue of material fact exists as to whether the defendants' services constituted professional engineering services. We therefore address the issue as framed by the parties.

[13] Although § 20-299, by its terms, applies to chapter 391 of the General Statutes, that chapter governs the licensing of professional engineers. Insofar as chapter 391 is a licensing statute, we can perceive no reason why the definition of "professional engineer" contained in that chapter should not also inform our understanding of that term for purposes of § 52-584a (a).

ning, [and] design" services; General Statutes § 20-299 (1); we cannot conclude, as a matter of law, that the services that the defendants rendered did not constitute professional engineering services within the meaning of § 20-299 (1). As we previously have indicated; see footnote 5 of this opinion; the assessment of the property included, among other things, a visual inspection of the property, a review of all standard published state and federal environmental site inventories and databases, a search of department of environmental protection files pertaining to the property and certain abutting properties, a review of all applicable public records at the town conservation department, fire marshal's office, engineer's office, city clerk's office and tax assessor's office, and a review of all published or publicly available background information sources, including soil surveys, water quality maps, topographic maps, geological references and wetland maps. In the report, Hopkins indicated that he had reviewed all of the findings in his capacity as a "licensed professional engineer and a licensed environmental professional," and agreed with the conclusion in the report that the property was not an establishment subject to the provisions of the act. We agree with the plaintiff that, notwithstanding Hopkins' affidavit to the contrary, this evidence, together with the definition of "professional engineer" in § 20-299 (1), gives rise to a genuine issue of material fact as to whether the defendants' services constituted professional engineering services.

We next address the defendants' claim that they are entitled to summary judgment because they did not perform services in connection with an improvement to real property within the meaning of § 52-584a (a) but, rather, in connection with the plaintiff's application for a bank loan. The defendants further contend that, contrary to the contention of the plaintiff, the monitor-

ing wells were not improvements to property because they did not add value to the property. We disagree.

As we previously have indicated, in support of its objection to the defendants' motion for summary judgment, the plaintiff submitted the affidavit of Perlman, in which he stated that the assessment was integral to the plaintiff's plan to acquire and improve the property. Specifically, he stated that, without a favorable report indicating that the property was not an establishment, the bank would not have agreed to finance the purchase of the property and subsequent improvements thereto. The plaintiff also submitted the environmental assessment report prepared by the defendants, which states, inter alia, that "[t]he purpose of [the assessment was] to identify and record existing, potential or suspected conditions *that may impose an environmental liability to, or restrict the use of, the [property]*." (Emphasis added.) We agree with the plaintiff that Perlman's affidavit, considered with the environmental assessment report, gives rise to a genuine issue of material fact as to whether the defendants' services were performed in connection with the "planning" of improvements to real property within the meaning of § 52-584a (a). Indeed, the environmental assessment report itself states that "[t]he *purpose* of [the assessment was] to identify and record existing, potential or suspected conditions that may impose an environmental liability to, or restrict the use of, the [property]." (Emphasis added.) It says nothing about an application for a bank loan. Accordingly, we reject the defendants' claim that they are entitled to judgment as a matter of law because their services were not performed in connection with an improvement to real property, as § 52-584a (a) requires, but solely in connection with the plaintiff's application for a bank loan.

We also agree with the plaintiff that there exists a genuine factual issue as to whether the monitoring wells

constituted improvements to property within the meaning of § 52-584a (a) such that the seven year limitation period of that statute began to run, at the earliest, on September 19, 2000. The defendants contend that the wells were not improvements because they added no value to the property and because they were installed solely for the purpose of assisting the plaintiff in securing a bank loan. In light of our conclusion that there is a disputed factual issue as to whether the defendants' services were rendered in connection with an improvement to real property, we address only the defendants' claim that the wells did not add value to the property and, therefore, did not constitute an improvement to property within the meaning of § 52-584a (a).

"In *Grigerik* v. *Sharpe*, [supra, 247 Conn. 306–307], we defined the term ' "improvement to real property" ' in the context of interpreting . . . § 52-584a. In that case, we stated that '[t]he phrase "improvement to real property" is a phrase that has acquired a particular meaning in the law. Without attempting to define the phrase in all its possible nuances and applications, we have little difficulty in concluding that an "improvement to real property," as commonly understood in the law, "[g]enerally has reference to buildings, but may also include any permanent structure or other development [of the real property in question]." Black's Law Dictionary (6th Ed. 1990). Consistent with that understanding, we have defined an improvement to real property as an alteration or development of the property in order to enhance or promote its use for a particular purpose. *Metropolitan District* v. *Barkhamsted*, 199 Conn. 294, 302, 507 A.2d 92 (1986).' *Grigerik* v. *Sharpe*, supra, 306–307. Our conclusion in *Grigerik* is consistent with the definition of 'improvement' found in the [seventh] edition of Black's Law Dictionary, [which was] . . . published in 1999. There[in], the term is defined as '[a]n addition to real property, whether permanent or not;

[especially] one that increases its value or utility or that enhances its appearance.' Black's Law Dictionary (7th Ed. 1999)." *Verna* v. *Commissioner of Revenue Services*, 261 Conn. 102, 108–109, 801 A.2d 769 (2002).

Applying this definition of "improvement to real property" to the facts of the present case, we cannot conclude as a matter of law that the monitoring wells were not an improvement to property for purposes of § 52-584a (a). The wells were constructed of PVC screen and casing pipes that were two inches in diameter, and the wellheads were "finished protective steel hand boxes in concrete collars" that were placed in the ground. For the same reasons that we conclude that there exists a genuine issue of material fact as to whether the defendants' services were performed in connection with improvements to real property, we reject the defendants' contention that the monitoring wells added no value to the property as a matter of law. Perlman's affidavit states that the plaintiff would not have been able to secure financing to purchase the property without the defendants' assessment of the property, which required installation of the monitoring wells. We agree with the plaintiff that this evidence gives rise to a genuine issue of material fact as to whether the wells increased the property's value or enhanced its utility so as to bring the plaintiff's claims within the seven years statute of limitations contained in § 52-584a (a).

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.