# FERENCNE OCSAI *v.* EXIT 88 HOTEL, LLC, ET AL.
## (AC 30847)

Bishop, Robinson and Dupont, Js.

Argued October 28, 2010—officially released April 12, 2011

*Jeffrey O. McDonald,* with whom was *Louis N. George,* for the appellant (third party defendant Hospitality Services Corporation).

*James F. Shields,* for the appellees (named defendant et al.).

ROBINSON, J. The third party defendant, Hospitality Services Corporation (Hospitality), appeals from the summary judgment rendered by the trial court in favor of the third party plaintiff, Exit 88 Hotel, LLC (Exit 88). Hospitality also appeals from the denial of its motion for summary judgment.[1] The issue presented in this appeal is whether the court properly determined that there was no genuine issue of material fact as to

---

[1] "Although the denial of a motion for summary judgment is not a final judgment and thus is not ordinarily appealable . . . the rationale for this rule is not applicable where both sides have filed motions for summary judgment and the court has granted one of them." (Citations omitted.) *CTB Realty Ventures XXII, Inc.* v. *Markoski,* 33 Conn. App. 388, 391 n.3, 636 A.2d 379, cert. granted on other grounds, 228 Conn. 929, 640 A.2d 115 (1994) (appeal withdrawn July 18, 1994). Nevertheless, because we conclude that there is a genuine issue of material fact and, therefore, that summary judgment is improper in this case, we decline to address the court's decision denying Hospitality's motion for summary judgment.

whether Hospitality breached the indemnification provision of the service contract between it and Exit 88. We reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On September 15, 2003, Hospitality entered into a contract with Exit 88 under which Hospitality agreed to provide personnel as requested by Exit 88,[2] in conjunction with Exit 88's operations at the Mystic Marriott Hotel & Spa located in Groton (Mystic Marriott).[3] Hospitality subcontracted the provision of labor under its contract with Exit 88 to Apollo Commercial Cleaning Services (Apollo). The plaintiff, Ferencne Ocsai, was employed by Apollo. Apollo assigned the plaintiff to perform housekeeping services at the Mystic Marriott. On March 2, 2004, the plaintiff was injured while performing services at the Mystic Marriott. Specifically, she suffered partial amputation of several fingers on her left hand due to the malfunction of a towel folding machine.

On March 10, 2006, the plaintiff filed an eight count complaint against the defendants Exit 88, Exit 88 Offices, LLC, Waterford Hotel Group, Inc., and Sodexho, Inc.,[4] alleging, inter alia, negligence and recklessness in connection with the dangerous conditions surrounding the towel folding machine. On December 11, 2006, the defendants moved to implead Hospitality, and, after the

[2] Paragraph 2 of the contract provided in relevant part: "[Hospitality] shall provide personnel as requested by [Exit 88] services, housekeeping services, and utility services as requested by [Exit 88]. [Hospitality] and [Exit 88] agree that [Exit 88] shall provide supplies, uniforms, and name tags to contract employees. [Hospitality] agrees to complete all work in a good and workman like manner. [Hospitality] agrees to provide transportation of contract employees to and from [Exit 88's] place of business."

[3] At all times relevant to this appeal, Exit 88 owned and operated the Mystic Marriott.

[4] Exit 88 also filed an apportionment complaint against Yankee Equipment Systems, Inc., and Daniels Equipment Company, Inc. Those apportionment defendants are not parties to this appeal.

court granted their motion, Exit 88 filed a two count third party complaint against Hospitality alleging breach of contract and common-law indemnification in connection with the plaintiff's personal injury claim. Specifically, in the first count, Exit 88 alleged that Hospitality failed to comply with paragraph 12 of the service contract (indemnification provision), which required that Hospitality defend and indemnify Exit 88 against the plaintiff's claim. In the second count, Exit 88 asserted a common-law indemnification claim and alleged that Hospitality was negligent in its inspection of the towel folding machine and its supervision of its employees using the towel folding machine. Thereafter, Exit 88 filed a motion for summary judgment as to the first count of its third party complaint, while Hospitality filed a motion for summary judgment as to both counts.

On December 23, 2008, the court issued a memorandum of decision in which it granted summary judgment in favor of Exit 88 on the first count and in favor of Hospitality on the second count. As to the first count, the court concluded that there was no genuine issue of material fact that Hospitality breached the indemnification provision of the contract. The court's conclusion rested on its determination that the indemnification provision unambiguously required Hospitality to defend and to indemnify Exit 88 against the plaintiff's claim of injury. As to the second count, the court granted summary judgment in favor of Hospitality, concluding that there was no genuine issue of material fact as to any of the elements of common-law indemnification. Subsequently, Hospitality filed this appeal.

On appeal, Hospitality claims that the court incorrectly determined that the indemnification provision unambiguously required it to defend and to indemnify Exit 88 against the plaintiff's claim of injury. In support of its claim, Hospitality argues that the plain language of the indemnification provision does not require it to

defend and to indemnify Exit 88. Hospitality argues, in the alternative, that the indemnification provision is ambiguous, and the matter therefore should be remanded for a trial to determine what the parties intended that provision to mean.

We begin our analysis with the well settled standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Plato Associates, LLC* v. *Environmental Compliance Services, Inc.*, 298 Conn. 852, 862, 9 A.3d 698 (2010). Because the court's decision on a motion for summary judgment is a legal determination, our review on appeal is plenary. *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 559, 864 A.2d 1 (2005).

"Equally well settled is that the trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [T]he trial court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Citations omitted; internal quotation marks omitted.) *Fleet Bank, N.A.* v. *Galluzzo*, 33 Conn. App. 662, 666, 637 A.2d 803, cert. denied, 229 Conn. 910, 642 A.2d 1206 (1994). "[I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . There must be a showing that it is quite clear what the truth is, and any real doubt as to the existence of any genuine issue of material fact must be excluded." (Citation omitted; internal quotation

marks omitted.) *Michaud* v. *Gurney*, 168 Conn. 431, 433, 362 A.2d 857 (1975).

"A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties [to a contract] is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Internal quotation marks omitted.) *Neubig* v. *Luanci Construction, LLC*, 124 Conn. App. 425, 432, 4 A.3d 1273 (2010).

"Well established principles guide our analysis in determining whether the language of a contract is ambiguous. [A] contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. [A]ny ambiguity in a contract must emanate from the language used by the parties." (Internal quotation marks omitted.) *Reid* v. *Landsberger*, 123 Conn. App. 260, 285, 1 A.3d 1149 (*Bishop, J.*, concurring and dissenting), cert. denied, 298 Conn. 933, 10 A.3d 517 (2010). "A word is ambiguous when it is capable of being interpreted by reasonably well informed persons in either of two or more senses. . . . Ambiguous can be defined as unclear or uncertain, or that which is susceptible of more than one interpretation, or understood in more ways than one." (Internal quotation marks omitted.) *Flaherty* v. *Flaherty*, 120 Conn. App. 266, 269, 990 A.2d 1274 (2010). If the language of the contract is susceptible to more than one

reasonable interpretation, the contract is ambiguous. *United Illuminating Co.* v. *Wisvest-Connecticut, LLC,* 259 Conn. 665, 671, 791 A.2d 546 (2002).

The indemnification provision of the contract provides in relevant part: "[Hospitality] shall, to the fullest extent permitted by law and at its own cost and expense, defend, indemnify and hold [Exit 88], its partners, affiliates, directors, officers, employees, servants, representatives and agents harmless from, and against any and all claims, loss, (including attorneys' fees, witnesses' fee and all court cost), damages, expense and liability (including statutory liability), resulting from injury and/or death of any person or damage to or loss of any property arising out of negligent or wrongful act, error or omission or breach of contract, in connection with the *operations* of [Hospitality] or its subcontractors. The foregoing indemnity shall include injury or death of any employee of [Hospitality] or subcontractor . . . ." (Emphasis added.)

Initially, we note that the trial court determined that "[the plaintiff's] use of the towel folding machine at Exit 88 was clearly in connection with the operations of the contractor [Hospitality] or its subcontractors [Apollo] . . . ." (Internal quotation marks omitted.) It is unclear, however, whether the plaintiff's use of the towel folding machine was in connection with the operations of Hospitality or Apollo. The contract does not define the term "operations" nor does it clearly indicate the type of work that the term "operations" includes. Furthermore, although the contract provides some indication of what Hospitality's operations include, albeit unclearly, it provides no indication of what Apollo's operations include. On the basis of our review of the contract, we conclude that the term "operations" is subject to more than one reasonable interpretation and, therefore, is ambiguous.

The term "operations" reasonably could be interpreted to mean the work performed at the Mystic Marriott by the employees of Hospitality or Apollo, including the plaintiff's use of the towel folding machine. Paragraph 2 of the contract states that "[Hospitality] agrees to complete all work in a good and workman like manner"; paragraph 3 states that "[Hospitality] will have the authority to hire, promote, discharge and supervise the work of its employees, and shall be liable for all employee-related obligations, including workers compensation and unemployment benefit assessments"; and paragraph 4 states that "[Hospitality] shall provide an English speaking interpreter to work with [Exit 88] as needed to assist in the training of the contract employees."

Alternatively, the meaning of the term "operations" could be limited to the provision of labor by Hospitality or Apollo as requested by Exit 88 and the work done to facilitate the provision of that labor. The recitals in the contract state that Hospitality is "engaged in the business of providing contract labor"; paragraph 2 of the contract states that Hospitality "shall provide personnel as requested by [Exit 88]"; and paragraph 4 states that Exit 88 "shall be responsible for all training and supervision of contract employees . . . ." These provisions suggest that Hospitality's operations are limited to providing contract labor and do not include performing the work at the Mystic Marriott.

Because the language of the indemnification provision, specifically the term "operations," is "susceptible to more than one reasonable interpretation"; *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, supra, 259 Conn. 671; the contract is ambiguous. See id. As a result of this ambiguity, the meaning of the term "operations" involves a genuine issue of material fact. The parties are therefore entitled to present evidence in support of their interpretation to a fact finder, and

the fact finder will be required to determine, as a factual matter, the meaning of the provision. Without a factual determination of what Hospitality's or Apollo's operations include, it is unclear whether the indemnification provision is triggered by the plaintiff's claim of injury. Accordingly, we conclude that the trial court improperly rendered summary judgment in favor of the third party plaintiff, Exit 88.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.