JOHN LATHROP *v.* MALCOLM PIRNIE, INC.
(AC 32510)
(AC 32511)

Gruendel, Espinosa and Lavery, Js.

Argued May 19—officially released September 6, 2011

*Christopher J. Murray*, for the appellant (named plaintiff).

*Jeffrey R. Babbin*, with whom, on the brief, was *Joan Allen Rowe*, for the appellant (intervening plaintiff Olin Corporation-New Haven Copper Company).

*Cara Joyce*, with whom, on the brief, was *Patrice Noah*, for the appellee (named defendant).

*Opinion*

LAVERY, J. In these consolidated appeals, the plaintiff, John Lathrop, and the intervening plaintiff, Olin Corporation-New Haven Copper Company (Olin),[1] appeal from the summary judgment rendered by the trial court in favor of the defendant, Malcolm Pirnie, Inc.[2] The dispositive issue on appeal is whether the

---

[1] We will refer to Lathrop and Olin individually by name and collectively as the plaintiffs.

[2] The plaintiffs concede that the trial court properly granted summary judgment in favor of Glacier Drilling Company, LLC (Glacier), because it is not a professional engineering firm. Accordingly, the plaintiffs do not challenge the court's decision insofar as it concerns Glacier. We will refer in this opinion to Malcolm Pirnie, Inc., as the defendant.

court properly determined that no genuine issue of material fact existed as to whether the seven year statute of limitations set forth in General Statutes § 52-584a applies in the present case. The plaintiffs argue that a genuine issue of material fact exists as to whether the defendant provided services in connection with "an improvement to real property" within the meaning of § 52-584a (a). We agree with the plaintiffs that a genuine issue of material fact exists.[3] Accordingly, we reverse the judgment of the trial court granting summary judgment in favor of the defendant.

The following facts and procedural history are relevant to our review of the plaintiffs' appeals. The present appeals stem from a negligence action arising from injuries that Lathrop, an Olin employee, allegedly sustained after he tripped due to a sunken concrete cap that had been placed in the floor of a factory owned by Olin. Olin previously had contracted with the defendant, a professional engineering firm, to test for soil contamination. The defendant, in turn, contracted with a subcontractor, Glacier Drilling Company, LLC (Glacier), to drill boring holes through the factory floor in order to provide access to the soil. Glacier began drilling on December 27, 2004, and completed its services on January 17, 2005. Under its contract with the defendant, Glacier also was responsible for filling the boring holes by using a process known as "backfilling." The contract between Glacier and the defendant specified how the backfilling would be performed. It provides in relevant part: "All . . . borings will be sealed with a grout mixture of 95 percent by weight Portland cement and 5 percent . . . bentonite . . . ." The top of the hole,

---

[3] Because our conclusion that a genuine issue of material fact exists with respect to the plaintiffs' claim that the defendant provided services in connection with an improvement to real property is dispositive, we do not address the plaintiffs' additional claim that the court improperly required them to plead and prove that the alleged improvements to the property could not have been completed as a result of the defendant's negligence.

however, was to be covered by a concrete cap that would be of equal level with the factory floor. The plaintiffs allege that at least one hole was not filled in accordance with the specifications in the contract. Specifically, the plaintiffs allege that the concrete cap on one backfilled hole had settled, leaving a 1.25 inch depression in the floor. Lathrop alleges that he sustained injuries on April 5, 2006, due to the negligent backfilling of a boring hole, which caused a concrete cap to sink below the floor.

Lathrop served the defendant with a complaint on March 26, 2008. On June 13, 2008, Olin filed an intervening complaint against the defendant to recover the workers' compensation benefits that it had paid to Lathrop. The defendant then filed a complaint against Glacier on August 26, 2008, seeking apportionment of liability pursuant to General Statutes § 52-102b. On September 24, 2008, Lathrop filed an amended complaint in order to assert a claim for money damages against Glacier. Thereafter, both Glacier and the defendant filed answers and special defenses denying the material allegations of Lathrop's amended complaint.

On December 10, 2009, the defendant and Glacier filed a motion for summary judgment, arguing that no genuine issue of material fact existed and that they were entitled to judgment as a matter of law because Lathrop's negligence action was barred by the three year limitation period of General Statutes § 52-584. Lathrop filed an objection on June 16, 2010, arguing that his negligence action was not time barred because he had filed his complaint within the seven year limitation period set forth in § 52-584a. On June 22, 2010, the court heard oral argument on the motion. On July 16, 2010, the court issued its memorandum of decision granting the motion for summary judgment. These appeals followed.

On appeal, the plaintiffs claim that the court improperly concluded that the negligence action was barred under § 52-584, and that there exists a genuine issue of material fact as to whether the defendant had provided services in connection with "an improvement to real property" within the meaning of § 52-584a. The defendant argues that the court properly determined that the three year statute of repose set forth in § 52-584 barred the plaintiffs' negligence action, and that the court properly determined that the seven year statute of limitations set forth in § 52-584a does not apply. We agree with the plaintiffs.

"The standard of review of a trial court's decision to grant summary judgment is well established. [W]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A material fact is a fact which will make a difference in the result of the case. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . .

"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . Where the trial court is presented with undisputed facts,

as it was here, our review of its conclusions is plenary, as we must determine whether the court's conclusions are legally and logically correct [and find support in the facts that appear in the record]." (Citations omitted; internal quotation marks omitted.) *Vestuti* v. *Miller*, 124 Conn. App. 138, 142–43, 3 A.3d 1046 (2010).

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant [the defendant's] motion for summary judgment is plenary. . . . Issues of statutory construction . . . are also matters of law subject to our plenary review." (Internal quotation marks omitted.) *Plato Associates, LLC* v. *Environmental Compliance Services, Inc.*, 298 Conn. 852, 862, 9 A.3d 698 (2010).

The defendant's motion for summary judgment was granted because the court found that the three year statute of repose contained in § 52-584 applied, thus barring the plaintiffs' negligence action. The plaintiffs argued that the seven year statute of limitations in § 52-584a should have been applied, and therefore the action should be allowed to proceed. We believe it helpful to begin our discussion with an examination of the two statutes in question.

Section 52-584 provides in relevant part: "(a) No action to recover damages for injury to the person . . . caused by negligence . . . shall be brought but within

*two years* from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ." (Emphasis added.) Section 52-584a (a) provides in relevant part: "No action . . . whether in contract, in tort, or otherwise, (1) to recover damages (A) for any deficiency in the design, planning, contract administration, supervision, observation of construction or construction of, or land surveying *in connection with, an improvement to real property* . . . (C) for injury to the person . . . arising out of any such deficiency, or (2) for contribution or indemnity which is brought as a result of any such claim for damages shall be brought against any architect, professional engineer or land surveyor performing or furnishing the design, planning, supervision, observation of construction or construction of, or land surveying in connection with, such improvement more than *seven years* after substantial completion of such improvement." (Emphasis added.)

It is undisputed that in the present case the limitation period began to run on the same day under both statutes, January 17, 2005, the day that Glacier had finished drilling and backfilling the boring holes. The complaint was not served until March 26, 2008. Therefore, if the three year statute of repose contained in § 52-584 applies, then the action is barred, but if the seven year statute of limitation in § 52-584a applies, then the action can go forward. Our Supreme Court has stated that the seven year statute of limitations contained in § 52-584a applies for certain actions against architects and engineers arising out of a deficiency in the design, planning, contract administration, supervision, observation of construction or construction of an *improvement to real property. Grigerik* v. *Sharpe,* 247 Conn. 293, 305, 721 A.2d 526 (1998). Because the defendant conceded

before this court at oral argument that it is a professional engineer and was hired to perform the duties of a professional engineer, the sole issue on appeal is whether the defendant's actions constitute an "improvement to real property," as that term has been defined by Connecticut law.

Our Supreme Court defined the term "improvement to real property" as it relates to § 52-584a in *Verna* v. *Commissioner of Revenue Services*, 261 Conn. 102, 108–109, 801 A.2d 769 (2002). The court recently reaffirmed its definition in *Plato Associates, LLC* v. *Environmental Compliance Services, Inc.*, supra, 298 Conn. 867–68.[4] In *Plato Associates, LLC,* our Supreme Court explained that "[i]n *Grigerik* v. *Sharpe,* [supra, 247 Conn. 306–307], we defined the term improvement to real property in the context of interpreting . . . § 52-584a. In that case, we stated that [t]he phrase improvement to real property is a phrase that has acquired a particular meaning in the law. Without attempting to define the phrase in all its possible nuances and applications, we have little difficulty in concluding that an improvement to real property, as commonly understood in the law, [g]enerally has reference to buildings, but may also include any permanent structure or other development [of the real property in question]. Black's Law Dictionary (6th Ed. 1990). Consistent with that understanding, we defined an improvement to real property as an alteration or development of the property in order to enhance or promote its use for a particular purpose. . . . Our conclusion in *Grigerik* is consistent with the definition of improvement found in the [seventh] edition of Black's Law Dictionary, [which was]

---

[4] The court did not have the benefit of our Supreme Court's decision in *Plato Associates, LLC* v. *Environmental Compliance Services, Inc.,* supra, 298 Conn. 852. Our Supreme Court released its decision in November, 2010, after the trial court had granted the defendant's motion for summary judgment in this case.

. . . published in 1999. There[in], the term is defined as [a]n addition to real property, whether permanent or not; [especially] one that increases its value or utility or that enhances its appearance. Black's Law Dictionary (7th Ed. 1999)."[5] (Citations omitted; internal quotation marks omitted.) *Plato Associates, LLC* v. *Environmental Compliance Services, Inc.*, supra, 867–68.

The defendant argues that it provided environmental testing services only, and, as such, its activities do not constitute an improvement to real property. It is undisputed that Olin hired the defendant to test its factory for environmental pollutants. To this end, the defendant was required to perform an investigation in order to determine which pollutants were present at the factory, design a remediation plan and "supervise the remediation and/or removal of pollutants." The defendant also was required to perform a variety of specific tasks, including the following: to look into the nature of operations, to assess sources of pollution, to develop an investigation plan to determine the nature and extent of contamination, to collect groundwater samples, to oversee soil borings, well borings and the proper backfilling of soil borings, to evaluate test data, to determine the need for remediation and develop a remediation plan. In order to enable the defendant to perform the foregoing tasks, Glacier drilled two types of boring holes into the factory floor, soil borings and well borings. The soil borings enabled the defendant to collect soil samples, while the borings for monitoring wells enabled the defendant to collect water samples. It is not clear how many borings were drilled, but Glacier's owner, Mark Schock, estimated that Glacier had drilled two dozen borings, including several monitoring wells. During his deposition, Mark Barnasse, one of the defendant's

---

[5] We note that the definition of improvement in the current edition of Black's Law Dictionary remains the same. See Black's Law Dictionary (9th Ed. 2009) p. 826.

employees, stated that several monitoring wells remained on the site.

After the defendant removed a sample from a boring, Glacier "backfilled" the hole. As specified in the contract between the defendant and Glacier, the borings were to be backfilled with a grout mixture of 95 percent by weight Portland cement and 5 percent bentonite. After the holes were backfilled, they were to be topped with a concrete cap. At oral argument before this court, the defendant's attorney argued that the defendant's work could in no way constitute an improvement to real property; in other words, its actions, as a matter of law, do not constitute an improvement to real property. To support its argument, the defendant directs us to our Supreme Court's decision in *Grigerik* v. *Sharpe*, supra, 247 Conn. 293.

In *Grigerik*, a septic system could not be completed due to the negligence of a professional engineer. Our Supreme Court concluded that where the improvement to real property contemplated by the architect's or engineer's services is not completed because of the defect complained of, § 52-584a, and not § 52-584, applies to the plaintiff's cause of action. *Grigerik* v. *Sharpe*, supra, 247 Conn. 308. The defendant argues that the reason that our Supreme Court concluded that § 52-584a applied in *Grigerik* was that the defendant therein was hired to perform soil testing *and* to design a septic system. The defendant distinguishes *Grigerik* from the present case by noting that it was hired to perform only soil testing.

The plaintiffs, however, rely on our Supreme Court's recent decision in *Plato Associates, LLC* v. *Environmental Compliance Services, Inc.*, supra, 298 Conn. 852, and argue that a genuine issue of material fact is in dispute. In *Plato Associates, LLC*, the plaintiff sued

an engineering firm and its engineer manager for negligence and breach of contract. As in the present case, the parties argued that different statutes of limitations applied. Id., 855. The plaintiff argued that because it contracted with the defendant engineering firm to conduct environmental tests by digging five boring holes and installing two monitoring wells, these activities were a sufficient improvement to real property to trigger the seven year limitation of § 52-584a. Id., 855–56. The court concluded that "whether the plaintiff's claims fall within the purview of § 52-584a (a) is a disputed factual issue that is not appropriate for summary judgment." Id., 863. Specifically, the court held, inter alia, that whether the environmental tests were performed in connection with the planning of improvements to real property within the meaning of § 52-584a was a question of material fact, and thus, improper for summary judgment. Id., 866. The court also held that there existed a genuine factual issue as to whether the monitoring wells themselves constituted improvements to the property within the meaning of § 52-584a (a). Id., 866–67.

We conclude that there exists a genuine issue of material fact as to whether the monitoring wells constituted improvements to Olin's property. As stated previously, our Supreme Court has interpreted the term "improvement to real property" broadly, including any alteration that is an addition to real property, whether permanent or not; especially one that increases its value or utility or enhances its appearance. Id., 867–68. During oral argument before this court, the defendant's attorney argued that the defendant's work "in no way could be constituted an improvement to real property." In *Plato Associates, LLC*, the court dealt with the issue of whether monitoring wells constituted improvements to property. The court ultimately concluded, in a factual context similar to the context in the present case, that

a genuine issue of material fact existed as to whether the factory was improved by the installation of monitoring wells. Id., 866–68. In this case, at least one monitoring well was installed. Moreover, the court in *Plato Associates, LLC*, noted that the wells were constructed out of "PVC screen and casing pipes that were two inches in diameter, and the wellheads were finished protective steel hand boxes in concrete collars that were placed in the ground." (Internal quotation marks omitted.) Id., 868. Similarly, the monitoring wells at issue in the present case were constructed from "5 or 10 [foot] machine-slotted or woven well screens constructed of at least 2 inch I.D. threaded flush joint Schedule 40 or SCH 80 PVC or wire wound type 304 stainless steel. . . . A 6 foot length of 4 inch inside diameter or larger steel protective pipe or casing shall be placed in the borehole around each well or piezometer riser pipe and anchored in the ground with Portland cement grout." In light of our Supreme Court's definition of an "improvement to real property," we conclude, as a matter of law, that the defendant's actions in conducting the environmental tests and installing the monitoring wells might constitute an improvement to the property for the purposes of § 52-584a. Accordingly, we find that a genuine issue of material fact exists in this case as to whether the defendant's actions and alterations improved the property.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.